JAMES A. MALCOLM vs. FREDERICK J. FULLER.

Suffolk.        March 11, 12, 1890. — September 4, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Master and Servant — Employers' Liability Act — Superintendence — Risk of
Employment — Evidence of Due Care — General Repute.*

A quarryman, in general charge of a quarry, finding that the wadding still remained in a hole which he had assisted in drilling and in loading with powder, and had attempted to discharge, negligently assumed that the charge had exploded and passed off through another hole by a connecting crevice in the rock, and, deciding to drill out the wadding, directed a fellow workman to hold the drill while he did the striking, whereupon the charge exploded, injuring such workman. *Held,* that the risk of such an explosion was not one of those assumed by the workman, and that their common employer would be liable to him under the employers' liability act (St. 1887, c. 270, § 1, cl. 2) for the quarryman's negligence.

Evidence of the workman's belief that there was no danger, after the quarryman assured him that there was none, was *held* to be competent on the question whether he was in the exercise of due care.

The general reputation of such a quarryman as a careful workman, who was admitted to be entirely competent, was *held* to be clearly inadmissible.

TORT, under the St. of 1887, c. 270, § 1, cl. 2, for personal injuries. The first count of the declaration was as follows: " And the plaintiff says the defendant is the proprietor of a certain quarry in the town of Quincy; and that the defendant employed the plaintiff to work in said quarry under one Alexander Stewart, who was also employed by said defendant as foreman in said quarry, and who was intrusted with and exercising superintendence over said quarry, and whose sole and principal duty was that of superintendence; and by reason of the negligence of said Stewart in superintending the work of blasting rocks in said quarry, on or about the seventeenth day of September, 1888, while in said defendant's employ, the said plaintiff, who was at said time also in said defendant's employ and engaged in such blasting, was greatly injured; and the plaintiff was in the exercise of due care and diligence. And the plaintiff gave the defendant due notice, in writing, of the time, place, and cause of the injury, within thirty days from the time of said accident."

At the trial in the Superior Court, before *Hammond*, J., there was evidence tending to prove the following facts.

The defendant was the owner of a granite quarry in Quincy, at which the granite was got out by means of blasting, and employed, including the plaintiff, from twelve to fifteen men, among them Stewart and John Malcolm, a brother of the plaintiff, both of whom were skilled quarrymen. The plaintiff, for the most part, did the work of a common laborer, but knew how to hold as well as to strike a drill, and appreciated that working in a quarry where blasting was done was dangerous business.

The plaintiff's evidence, which was contradicted, tended to show that Stewart, while he assisted in the various manual labor of blasting, such as striking the drill and sinking and loading holes in the rock, getting the powder out of the powder-house, and discharging the blasts, was the only one at the quarry in general charge of the work, being most of his time occupied in superintending the men; that he put them to work and told them to leave off when the proper time came; that the men got their orders from him alone, and from no one else; that he looked about to see who was working, and, if there was a man lacking anywhere, would supply his place; that in particular he saw to it that the cutters of paving stones had plenty of stock with which to work; that when he was himself doing manual labor, he was on the lookout to see that the other men were at work, and would call out to them if they were not doing their work properly; and that the defendant was on the ground only two or three days in the week, and then only from half an hour to an hour at a time.

On September 15, 1888, it became necessary to clear off the surface rock in order to open up a fresh portion of the quarry; and Stewart and the Malcolms proceeded to do the work. Two holes about two inches apart were sunk in the rock to the depth of three feet, and were completed on September 17, the day of the accident. In drilling the holes, the plaintiff held the drill during the greater part of the time, while Stewart and John Malcolm did the striking. After the holes were prepared, Stewart, in the presence of the others, loaded each hole with a small charge of gunpowder, upon which was placed the cap connected with an electric battery by wires. A piece of wadding was then

put in, and the hole was filled up with a tamping of fine sand or gravel, the proper space being left between the powder and the wadding in order that the force of the powder should be exploded in a lateral direction upon the rock. Stewart fired the blast by means of the battery, and a loud explosion was heard, after which they returned to the place where the holes were drilled. Upon inspection it was seen that, while one of the holes was free from its charge and wadding, none of the tamping in the other hole was disturbed. Stewart assumed that the powder had blown out from beneath the wadding and tamping in that hole through a crevice in the rock, which was seen to connect them, and decided to drill out the wadding from the hole. He told the plaintiff to get a long drill, which he did, and, after attempting to soften the tamping with water and to scrape it out with a spoon, told the plaintiff to hold the drill while he did the striking. The plaintiff, believing Stewart's assurance that there was no danger, sat down and held the drill. Stewart thereupon struck the drill once or twice, the charge of powder exploded, and the plaintiff was blown up, receiving the injuries in question. It was admitted that the appliances used were proper, and that Stewart was competent to perform all the service required in blasting, and believed that the means he employed were safe.

The plaintiff offered in evidence his belief that there was no danger in his holding the drill after the first explosion, and after Stewart's assurance that there was no danger, that everything but a little gravel had come out, and that the charge had blown out through the other hole. The defendant objected to the admission of this evidence, but the judge admitted it on the issue of whether the plaintiff was himself in the exercise of due care; and the defendant excepted. Thereupon the plaintiff testified that he believed there was no danger after Stewart had said there was none. The plaintiff admitted that Stewart was competent for the service referred to, but refused to admit that he was a careful man, contending that this was immaterial. The defendant then offered to show, by the evidence of witnesses who were acquainted with the general reputation of Stewart, that he was a careful workman in quarries. The judge excluded this evidence, and the defendant excepted.

The plaintiff contended that in this instance Stewart was

negligent; but the defendant denied that Stewart was negligent, or that he was a superintendent within the meaning of the St. of 1887, c. 270, § 1, cl. 2, contending that he was nothing more than a general workman of experience, and asked the judge to give the jury the following instructions, among others: "1. On all the evidence the plaintiff cannot recover. 2. The injury was caused by one of the risks of the employment which the plaintiff assumed, and the plaintiff cannot recover. 3. Stewart's negligence, if any, was not the negligence of a person in the defendant's employ intrusted with and exercising superintendence, whose sole or principal duty was that of superintendence, and the plaintiff cannot recover. 4. The negligence, if any, was the act of striking the drill, and in that act Stewart was not exercising superintendence within the meaning of the St. of 1887, c. 270, and the plaintiff cannot recover. 5. There is no evidence that Stewart was 'intrusted with superintendence,' and the plaintiff cannot recover."

The judge declined so to instruct the jury, but upon the question whether Stewart was a superintendent, within the meaning of the Employers' Liability Act, instructed the jury as follows: "Was Stewart a superintendent within the meaning of the act? If he was, then, by the contract, the master must pay the servant the damages caused by Stewart's negligence. If he was not, then the servant must bear the consequences of the negligence, because he has agreed to in the contract which he has made with the master. Now, what is a superintendent? What are the principles under which you are to settle whether Stewart was a superintendent or not? A superintendent is a man having the control, with the power of authority. That is to say, when he speaks, the workmen are to obey, not because he advises them, or requests them, or hopes they will, but because, by virtue of his position, they have agreed to obey him. That is the nature of his authority. He is entitled to obedience. Suppose two or three men go to do a job of work, and, by reason of the greater experience of one, the others yield to his opinions and views, not because they are obliged to, — they may act upon their own opinions and views, — but because, on the whole, they think he knows best about it, and are willing to follow his advice; and he speaks to them, not by authority, but

as a man engaged in the same employment, and in the way of advice or suggestion. That is not superintendence, because it lacks the element of authority. The superintendent is entitled to be obeyed so long as the man is in the employ of the master; and in the last illustration, which I have given you, the suggestion is complied with, not in the way of obedience, but because the men are convinced that it is well to do the work in the way suggested. You must be satisfied that, in so far as Stewart was at work at the time with the plaintiff, it was the plaintiff's duty to obey Stewart, on the ground that Stewart had the authority to say what the plaintiff should do, and to tell him to do it, and that, by virtue of the plaintiff's contract with the master, he had agreed to obey Stewart, and did what he did as a matter of obedience to Stewart, because under the contract with the master he had agreed to obey him. There must be the element of authority on the part of the superintendent in order that it shall be superintendence within the meaning of the act; and the man intrusted with such authority, that is, with the authority to give an order, not to offer a suggestion or advice, but authority to give an order under such circumstances that by the contract the servant agrees to comply with the order, is a superintendent. If he is not intrusted with that kind of authority, but is simply allowed to go among the other workmen, and, by virtue of the suggestions which he may make, influence their action, and in that way have control over them, — if that is all there is to it, then he is not superintendent. That is, the superintendent acts as and for the master, as if he were the master, and is entitled in the acts of superintendence to the same degree of obedience as that to which the master would be entitled, and entitled to be obeyed so long as the servant continues in the employ of the master. I do not mean to say that the servant is obliged to obey; he might discontinue his employment; but he agrees to obey so long as he remains in the employment. Then there is another thing. He must not only be a superintendent, but that must be his sole duty, or his principal duty. If generally, or not principally, he is at work manually with his hands, then he is not a man whose sole or principal duty is that of superintendence. You must be satisfied that Stewart's principal duty was that of having the care and the oversight of the work, with

the power of authority, and that he was not, as a rule, engaged himself in the carrying out of his master's orders, by his own manual labor. That is, if Stewart was set to work with a gang of men, and expected to do his share either of holding or pounding the drill, and was generally engaged in that employment, or in manual employment about the quarry, then he is not a man whose sole or principal duty is that of superintendence. The purpose of the law is, that the master shall not free himself from liability by making anybody else a superintendent. But so far as anybody stands in the place of the master as superintendent, the negligence of that man is the negligence of the master; and you must be satisfied that Stewart was intrusted with superintendence, as I have explained to you, and that superintendence was his sole or principal duty. If you find that Stewart was a superintendent within the meaning of the law, and that that was his sole and principal duty, then the plaintiff has so far proved his case. If, however, you are left in doubt as to which way the evidence preponderates, in the first place, as to whether he was a superintendent, or, in the next place, as to whether that was his sole and principal duty, then the plaintiff has not made out his case, and your verdict should be for the defendant."

Upon the question whether Stewart was careless or not, the court instructed the jury, in substance, as follows: " Put yourself in Stewart's place, as an experienced quarryman, and see what ordinary prudence would have required of such a man, seeing what Stewart saw, and drawing the deductions which a man of his experience ought to have drawn from what he did see and what he knew. If you find that he was justified in doing what he did, that it was only the act of an ordinarily prudent man under the circumstances, then of course there was no negligence; but if you find that an ordinarily prudent man would not have been justified in striking the drill, and in coming to the conclusion to which Stewart came, then you may be justified in finding that there was negligence. You are to judge the act by what Stewart saw and knew, or by the exercise of reasonable care at the time could have seen and known, and the deductions which a man of his experience would be justified in drawing therefrom."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*E. C. Bumpus*, for the defendant.

*H. N. Sheldon*, for the plaintiff.

W. ALLEN, J.    The declaration is under the Employers' Liability Act, (St. 1887, c. 270,) and alleges that the plaintiff was employed by the defendant, and was injured by the negligence of a person in the service of the defendant, and intrusted with and exercising superintendence.    The plaintiff was injured while engaged in blasting rock with two other employees of the defendant, and he relied upon proof that the negligence of one of them, Stewart by name, caused the injury, and that Stewart was a superintendent.    The defendant contends that there was not sufficient evidence to justify submitting either question to the jury.

The evidence in regard to the superintendence of Stewart was conflicting; that put in by the plaintiff was clearly sufficient to justify a finding that Stewart was the general superintendent of the quarry, but the defendant contends that, in the act which caused the plaintiff's injury, Stewart was acting as a servant, and was not exercising superintendence.    The evidence shows that Stewart had been engaged in manual labor in drilling the holes for blasting, and that his act in striking the drill held by the plaintiff was the immediate occasion of the explosion which caused the injury to the plaintiff.    But the plaintiff does not rely upon any evidence of negligence of Stewart in the manner of drilling the holes, or of striking the drill.    The negligence which the evidence tended to prove is the manner of clearing out the hole in which the tamping remained after the discharge. If Stewart was superintendent, he was exercising superintendence in determining the manner in which the hole should be cleared out, and in directing the plaintiff to assist, and himself assisting in drilling it out.    In that respect, it was immaterial whether he himself struck the drill or ordered another person to do it.

The question whether the indications that the charge had exploded were such as justified Stewart in deciding to drill out the hole, instead of removing the tamping in some other way, was properly left to the jury.    The jury were instructed, at the request of the defendant, " If Stewart had a right to assume, as

a prudent man under the circumstances, that both charges had exploded, the plaintiff cannot recover."

It is not contended that the question whether the plaintiff was in the exercise of due care was not properly left to the jury, upon sufficient evidence, but the defendant contends that the danger was one the risk of which was taken by the plaintiff, as incident to the employment, and relies upon *Kenney* v. *Shaw*, 133 Mass. 501, which closely resembles the case at bar. In that case, which was before the passage of the St. of 1887, c. 270, it was not found whether the explosion which caused the injury to the plaintiff was caused by his negligence, or by the negligence of the superintendent, who was a fellow servant with the plaintiff, or without the negligence of either. If there was any negligence, it was that of the plaintiff, or of the superintendent, or of both. The plaintiff assumed the risk of his own negligence, of the negligence of the superintendent, and of the explosion of gunpowder without negligence, and the injury was caused by one of those risks. What the court there say is, that " the injury was caused by one of the risks of the employment which the plaintiff assumed."

The object of the St. of 1887, c. 270, § 1, cl. 2, is to make the defendant liable for, and to prevent the plaintiff from assuming, one of those risks, and the one which the jury found caused his injury. This plaintiff clearly did not assume the risk of all danger from explosions of gunpowder, however caused, in the course of his employment, and the instruction given at the request of the defendant, that " if the plaintiff, when he undertook to hold the drill in the hole, knew that it was dangerous, and continued to hold it, although he did so unwillingly, and under orders of another, he cannot recover, but must be held to have assumed the risk which he has knowingly undertaken," was sufficiently favorable to the defendant. The risk that the defendant or his superintendent would negligently attempt to remove a charge of gunpowder by drilling into a hole that had been charged, before ascertaining that the charge had exploded, was not one of the risks of his employment which the plaintiff assumed. See *Mellor* v. *Merchants' Manuf. Co.* 150 Mass. 362, and cases cited.

The testimony of the plaintiff, that he believed there was no

danger after Stewart's assurance that there was none, was competent on the question of his care.

Evidence of the general reputation of Stewart as a careful workman offered by the defendant was properly excluded. The action was not on account of the negligence of the defendant in employing an incompetent superintendent or workman. It was admitted that Stewart was competent. The ground of action relied on was the negligent act of a competent superintendent, and upon that question evidence that he was generally reputed to be a careful workman in quarries was clearly incompetent. See *Monahan* v. *Worcester*, 150 Mass. 439.

*Exceptions overruled.*