HOLLIS M. PERKINS *vs.* FURNESS, WITHY, AND COMPANY.

Suffolk.   November 13, 1896. — January 11, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Defective Hatchway in Vessel — Negligence — Due Care — Law and Fact.*

In an action against the owner of a vessel for personal injuries occasioned to the plaintiff, while employed by a contractor in loading ice thereon, by falling through a hatchway which had been left insecure, if there is evidence which warrants the inference that the insecurity of the hatchway was owing to the negligence of the defendant's servants, and evidence of due care on the part of the plaintiff, the case is properly submitted to the jury.

TORT, for personal injuries occasioned to the plaintiff, while employed by the Independent Ice Company in loading ice on a vessel owned by the defendant corporation, by falling through a

hatchway which had been left insecure, owing to the alleged negligence of the defendant and its servants. At the trial in the Superior Court, before *Sherman*, J., the defendant asked the judge to rule that, upon the evidence, the plaintiff could not recover ; but the judge refused so to rule.

The jury returned a verdict for the plaintiff ; and the defendant alleged exceptions. The facts appear in the opinion.

*J. Lowell, Jr.*, for the defendant.

*C. W. Bartlett & E. R. Anderson*, for the plaintiff.

MORTON, J. At the time of the accident the plaintiff was at work on a steamer owned and run by the defendant corporation, getting ready to take in ice to be used for refrigerating purposes in connection with the cargo, which consisted largely of fresh beef. He was there by the implied invitation or permission of the defendant corporation, though not in any way in their service, but in the employ of other parties. He was injured by falling through a hatchway which had been left insecure. There are two questions : first, whether there was any evidence which fairly warranted the jury in finding that the insecurity of the hatchway was due to negligence on the part of the officers or crew of the steamer ; and secondly, whether the plaintiff was in the exercise of due care.

The ice was put into the ship by an ice gang, of which the plaintiff was one. It was hoisted from the wharf and lowered through the upper No. 1 hatch upon the lower No. 1 hatch, and was taken thence to the refrigerators. The lower hatch was prepared for this use, by putting across it planks or hatch covers provided for the purpose, and each about eighteen inches wide, and then covering the whole with a tarpaulin which came down over the combings of the hatch. The tarpaulin was for the purpose of preventing water from the ice from dripping through into the hold. This was the usual way of fixing the hatch for the icing of the ship, as it was termed. There was testimony tending to show that the hatch was apparently in this condition when the plaintiff went to work at about six o'clock, and continued so till the accident, about an hour and a half later. The accident was due to the fact that one of the planks or hatch covers had been taken out, and the tarpaulin put back over the opening, thus left without anything to show

that the plank had been removed. The plaintiff stepped on the hatch and fell through this opening.

It appeared that earlier in the day stevedores had been discharging cargo through this hatchway, but they had finished about two o'clock, and the hatch covers had all been put back and a tarpaulin spread over them, and after that the stevedores had nothing to do with the hatch. After the stevedores got through and before the ice gang came, some of the crew and some carpenters went down into the hold, the former to sweep it out and the latter to repair the sheathing and ceiling, and one of the hatch covers was taken up and the tarpaulin rolled back. The carpenters were not in the defendant's employ, but in that of independent contractors. There was testimony tending to show that the crew came up a little before the carpenters, that the carpenters were the last persons in the hold, that when they came up they all went away together, and that none of them did anything to the tarpaulin. The captain testified, amongst other things, that the crew had put on all the hatch covers the afternoon before the accident, except that where the plaintiff fell, and that on that day his men put the tarpaulin on the hatch. Another witness testified that he saw the chief officer of the ship standing near the No. 1 hatch about five o'clock, and that the ship's men were putting the hatch covers on the No. 1 hatch on the upper deck, and that he "saw a tarpaulin covering the covers and combing of the hatch on the lower deck." The jury might have found that he was mistaken as to the time of day if that was material, and that it was in fact later than he supposed. Witnesses who had iced the ship on former trips testified that the tarpaulin had always been over the hatch, and they had never seen the hatch bare, and the plaintiff further testified that the ice men had nothing to do with arranging the covers, and that "the hatch was on and all right for work as far as could be seen, that is, closed, and a piece of tarpaulin spread over it." We think that, on this evidence, it was not an unwarrantable inference that the condition in which the hatchway was left was due to negligence on the part of the officers, men, or crew belonging to the ship.

Although the plaintiff had had a great deal of experience as a seafaring man, and had iced this and other vessels several hun-

dred times in all, and " was as familiar with the hatches he used as any one could be," there was nothing to show that he had any reason to suppose from the appearance of the hatch, or from any-thing else, that one of the hatch covers had been removed. The nature of his occupation required him to be about and on the hatch. The captain testified that he knew that the. ice men were coming at six o'clock, and we think that the plaintiff was justified in assuming that the hatch would be in safe condition for him to work upon, and that he was not bound in the exercise of due care to examine it for the purpose of ascertaining whether all of the hatch covers were in place. It was for the jury to say whether the plaintiff knew or ought to have known that the plank which he took for the runway was one of the hatch covers, and therefore ought to have been upon his guard respecting the hatch.

There being evidence of negligence on the part of the ser-vants of the defendant, and of due care on the part of the plain-tiff, the weight to be given to it was, of course, for the jury.

*Exceptions overruled.*