JAMES D. SULLIVAN *vs.* NEW BEDFORD GAS AND EDISON
LIGHT COMPANY.

Bristol.    October 23, 1905. — February 26, 1906.

Present: KNOWLTON, C. J., LATHROP, LORING, BRALEY, & SHELDON, JJ.

*Negligence*, Liability to servant of independent contractor.

R. L. c. 106, § 76, is intended to preserve but not to enlarge the common law lia-
bility of the owner of machinery to a servant of a contractor employed by
the owner for an injury caused by a defect in the machinery due to the owner's
negligence or to that of some person entrusted by him with the duty of keeping
it in proper condition.

The owner of machinery, who employs a contractor to do certain work by means
of the machinery, is not liable for an injury to an employee of the con-
tractor caused by an obvious imperfection in the machinery if it is not out
of repair.

In an action by a coal shoveller for injuries from a lump of coal falling on him
*while employed by a stevedore in trimming coal in the hold of a barge at the*
defendant's wharf where the coal from the barge was being unloaded by an
automatic device which tipped over a tub at the end of the arm of a derrick
and after emptying the coal swung the tub back right side up to the hold of
the vessel for another load, it appeared that the plaintiff was hired by the
stevedore on the day of the accident and that he was injured the first time that
the tub swung back after he went to work.    There was evidence warranting a
finding that the automatic apparatus was not balanced properly and for this
reason the tub did not always come back latched and with its mouth up after
discharging its load, and that this defect was the cause or a contributing cause
of the falling of the lump of coal on the plaintiff, but there was no evidence that
there was anything out of repair or that the apparatus was not in its usual con-
dition.    *Held*, that the plaintiff could not recover, the defendant having been
under no duty to him to remove the obvious imperfections of the apparatus
which it invited him to use.

TORT by a coal shoveller for personal injuries incurred on
May 17, 1904, while employed by one Mahoney, a stevedore, in
trimming coal in the hold of a barge at the defendant's wharf at
New Bedford, with counts at common law and under the em-
ployers' liability act alleging unsuitable appliances and a defect
in the ways, works and machinery of the defendant.    Writ dated
July 12, 1904.

At the trial in the Superior Court before *De Courcy*, J. the
defendant at the close of the evidence asked the judge to rule
that the plaintiff could not recover upon either count of his

declaration. The judge so ruled and ordered a verdict for the defendant. The plaintiff alleged exceptions.

The following statement of the case is taken from the opinion of the court:

The bill of exceptions in this case does not give an intelligible explanation in all respects of the machinery here in question.

The plaintiff was employed by one Mahoney to work in unloading a cargo of coal from a barge alongside of the defendant's wharf in New Bedford. It appeared that the usual method of unloading coal cargoes is to fill a tub, then hoist it on a derrick or some apparatus in the nature of a derrick, and swing it in by a rope in the hands of a guy man until it is over the coal pocket where it is to be discharged, when another man called a dumper upsets the tub. The tub is then pulled back by the guy man until over the hatch in the coal vessel, when it is lowered into the hold.

In the case at bar the tubs used by the defendant were heavy tubs of iron, thirty inches deep and thirty-six inches in width, with wheels in the bottom of them; the defendant in its brief says they had three. These wheels were boxed in and apparently were used to wheel the tubs from place to place. Just when it became necessary to wheel them about in connection with the defendant's automatic apparatus hereinafter described, if at all, does not appear. On the back of the tub was a latch which was automatically knocked out when the tub was over the coal pocket, whereupon the tub turned over bottom up and discharged its load of coal. The tub was fitted with a balance weight intended to cause it to right itself, and upon its doing so the latch would catch again, and hold it bottom down and mouth up. It was then run back until over the hold of the vessel, when it was lowered into the hold to receive a new load.

It is stated in the bill of exceptions that "The tub is operated by a cable passing over a movable truck which travels on two parallel tracks forming an inclined plane from the dumping place over the pocket down to a position over the hold of the barge." Just what this means we do not know.

The plaintiff was hired by Mahoney on the day of the accident to take the place of a coal shoveller who had been taken with cramps. He was told by Mahoney to go into the hold of

the barge, where he was set to work with Mahoney, shovelling a place for the tub on its return trip. The plaintiff's account of the accident was "that Mahoney told him to pair off with him, Mahoney; that he took a shovel and scraped the coal away just making room for the tub to come down, and he heard some one holler 'Look out,' and he jumped, and as he did so something struck him and rendered him unconscious." It appeared that what hit him was a lump of coal which had got jammed between one of the wheel boxes and the side of the tub and had not fallen out when the tub was upset. One of the plaintiff's witnesses testified "that as Mahoney and the plaintiff were scraping up coal to make room for the tub, the tub came down the run unlatched, and when it came to the forward end of the trolley the jar of the tub shook the lump of coal out of the tub, and it came down and hit the plaintiff on the head; that the tub came down the run mouth down and unlatched."

It appeared from the plaintiff's cross-examination that he had worked as a coal shoveller for five different employers in New Bedford; that for one of them he had worked for seven or eight years, shovelling coal and doing other work on the coal wharf. At this place and at another of these places tubs with boxed in wheels were in use, and he admitted that there was room enough for a lump of coal to get caught in these other tubs, but he testified that he never had known of coal being wedged in there, that is, between the wheel box and the side of the tub. It was testified to by the plaintiff and others called by him that it is the duty of the dumper when the ordinary method of unloading coal is used, to give warning if there is danger. It also appeared that the defendant's automatic device had been in operation for only twelve or thirteen days, all told, before the plaintiff was hurt; that on the day the plaintiff was hurt "it did not work any different than it had worked every day before; that the tubs sometimes came down latched and sometimes unlatched, and that in this respect there had been no difference from the beginning of his use of the apparatus; that there was nothing broken or out of repair on the day of the accident."

The plaintiff called a witness who testified that he was "a boiler maker and had been engaged in the business eighteen years, and had had experience in the making and mending of

coal tubs; that he had had experience in calculating the proportion of weight in the adjustment of tubs; that the ordinary tub is made so that after being dumped it swings back again and catches; that this is done by the counter balance on the back of the tub; that these tubs of the coal company are balanced the same as the ordinary tubs; that the proper position when empty would be bottom down and mouth up." He further testified that " assuming that an iron tub weighing about twelve hundred pounds, three feet square and three feet deep, such a tub as is used for dumping coal from a barge, and intended to operate in such a manner that when suspended it will empty and remain in an upright position, held by a catch suspended from the bail to the back of the tub [it] fails when empty to return to an upright position, and is not held by any force other than its own weight," he should attribute its failure to take its proper position to its " not being properly balanced," that is, to its " not having sufficient weight on the back of it to bring it back to its proper position."

By the uncontradicted testimony there was, as we have said, nothing broken or out of repair on the day of the accident. It also appeared that the defendant's automatic apparatus was the only one in New Bedford, and that the plaintiff never had worked on it.

Mahoney testified that he was a stevedore; that he was paid so much a ton for unloading the coal; that he hired, discharged, paid and had charge of the men engaged in unloading the coal.

The judge ruled that the plaintiff had not made out a case, to which he took the exception which is now before us.

*J. P. Doran,* for the plaintiff.

*O. Prescott, Jr.,* for the defendant.

LORING, J. [After the foregoing statement of the case.] We agree with the defendant that, as matter of law, on the evidence, Mahoney was an independent contractor; *Linton* v. *Smith,* 8 Gray, 147; *Conners* v. *Hennessey,* 112 Mass. 96; *Morgan* v. *Smith,* 159 Mass. 570; *Reagan* v. *Casey,* 160 Mass. 374; *Dane* v. *Cochrane Chemical Co.* 164 Mass. 453; *Boomer* v. *Wilbur,* 176 Mass. 482; *Eldred* v. *Mackie,* 178 Mass. 1; *Dutton* v. *Amesbury National Bank,* 181 Mass. 154; and that the plaintiff was his employee and not an employee of the defendant.

We agree with the plaintiff in his contention that where an owner makes a contract to have work done for him by an independent contractor, with his, the owner's, apparatus, the owner owes a duty to employees of the contractor. This is so at common law. *Mulchey* v. *Methodist Religious Society*, 125 Mass. 487, 489. *Hayes* v. *Philadelphia & Reading Coal & Iron Co.* 150 Mass. 457. See also *Curley* v. *Harris*, 11 Allen, 112 ; *Conlon* v. *Eastern Railroad*, 135 Mass. 195 ; *Perkins* v. *Furness*, 167 Mass. 403.

The effect of R. L. c. 106, § 76, is in our opinion to make certain that the intervening contract does not prevent the owner's owing a duty directly to the employee of the contractor. We do not think that it was intended " to enlarge the liability " of the owner (as was said in *Toomey* v. *Donovan*, 158 Mass. 232, 236). In that respect § 76 is like the first clause of § 71 of R. L. c. 106.

Further, we are of opinion that the duty of the owner to the employee of the contractor is the duty owed by an employer to his own employee in such a case. In case of permanent apparatus to be used by an employee, there is an invitation on the part of the owner to use the apparatus. But it is an invitation to use the apparatus then owned by the owner. That being the invitation, no duty grows out of that employment to buy a new and better machine, or, as it is usually said, the employee as matter of contract assumes all obvious risks incident to the use of the apparatus on which he is employed to work.

The same is true in case the work is to be done by an independent contractor. The invitation held out by the owner by making a contract for work to be done with his apparatus is to use that apparatus and not another apparatus. If an employee of the contractor accepts that invitation no duty grows out of that invitation and the acceptance of it to buy a new or better apparatus.

In the case at bar the evidence warranted a finding that the defendant's automatic apparatus was not properly balanced, and that for that reason it did not always discharge its load and come back latched and mouth up, and that this defect was the cause or a contributing cause of the injury here complained of. But there was no evidence that anything was out of repair.

There was therefore no evidence that the defendant had failed in the performance of a duty owed by it to the plaintiff.

It may seem hard on the plaintiff in the case at bar to hold that he assumed the risk of this bucket's not working as it should have worked when he was employed in a hurry and was injured the first time the bucket returned after he went to work. Whether that would have made any difference if he had been employed by the defendant or if he had sued the contractor need not be considered. His rights against the defendant grow out of the invitation given the plaintiff by reason of the contract with the plaintiff's employer. By inviting the contractor's employee to use that apparatus the defendant came under no duty to perfect it in matters which were obvious. The invitation given by the defendant to the contractor's employees cannot be affected by the circumstances under which the employee was employed by the independent contractor. This distinguishes the case at bar from *Ferren* v. *Old Colony Railroad*, 143 Mass. 197, were it not otherwise distinguishable, as we think it is.

<em>Exceptions overruled.</em>