MUNROE v. FRED T. LEY & CO.

SAME v. EDISON ELECTRIC ILLUMINATING CO. OF BOSTON.

(Circuit Court of Appeals, First Circuit. October 22, 1907.)

Nos. 698, 699.

1. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.

A lineman, engaged with others in removing wires from poles, who was injured by the falling of a pole on which he was at work, caused by its being rotten beneath the sidewalk in which it was planted, cannot be held to have assumed the risk from such danger under the circumstances explained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 610, 612.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. SAME—ACTION FOR INJURY—QUESTIONS FOR JURY.

In an action by a lineman employed with others in removing electric light wires from the poles on which they were strung to recover for an injury caused by the falling of a pole on which he was at work, it was shown that the cause of the injury was the negligent method of doing the work; that the act of negligence which was the immediate cause of the falling of the pole was done by a workman by direction of one of two men who were standing on the ground, and not working with their hands, but giving directions to the workmen. Held, that such evidence was sufficient to entitle plaintiff to go to the jury on the question whether or not such men were, or either of them was, "entrusted with and exercising superintendence and whose sole or principal duty was that of superintendence," so as to render the defendant, as employer, liable for his negligence under the Massachusetts employer's liability act (Rev. Laws Mass. c. 106, § 71).

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1068–1088.]

3. SAME—ACTION FOR INJURY—WHEN OWNER OF PREMISES IS NOT LIABLE.

A subordinate corporation contracted with an electric illuminating company, which controlled a number of plants, for all its work of reparation and rebuilding, and in the contract agreed to assume all risks in reference thereto. Held, that the major corporation was under no liability, either at common law or under the employer's liability statutes of Massachusetts, for any injury arising to a lineman employed by the subordinate corporation in the work of reparation or rebuilding on its premises, or about its works, through the negligence of the subordinate corporation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1251.]

In Error to the Circuit Court of the United States for the District of Massachusetts.

George H. Tinkham (Simon E. Duffin, on the brief), for plaintiff in error.

Frederick P. Cabot (Henry F. Hurlburt and Charles M. Davenport, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. The plaintiff in error in each case was the plaintiff below, so that there will be no confusion in describing

the parties. In each there was a trial by jury, and the Circuit Court directed a verdict for the defendant, which was followed by a judgment accordingly; and the plaintiff took out these writs of error.

In the suit against Fred T. Ley & Co., the facts, as stated by the plaintiff, were as follows:

"This is an action of tort, brought by John D. Munroe, an alien, who while working at the top of an electric light pole was thrown to the ground by its breaking off a little below the surface of the ground. The declaration contained six counts, the first three at common law, and the last three under the employer's liability act of Massachusetts.

"The plaintiff was one of a gang of men, working under the directions of a foreman, which was engaged in removing the wires from a line of 13 electric light poles about 12 years old. This work was being done preparatory to removing these poles; the system having been changed from an overhead to an underground one. Upon these poles were four heavy wires, and from them 12 similar wires had been removed within a year prior to the accident. The poles were set in a brick sidewalk, such as is common in the city of Boston, were square, painted, and about 40 feet high. While at the top of one of these poles, the plaintiff was thrown to the ground by the pole snapping off a little below the surface. This pole was sound above ground, but was rotten below the surface. The defendant had never made a contract, written or verbal, with the linemen in its employ by which the latter were to undertake the duty of inspecting poles for interior defects, nor had it given its linemen any instructions to that effect, either written or verbal, nor was the plaintiff furnished with the necessary tools with which to inspect for interior defects. The plaintiff had never worked upon this line of poles. He was not informed of the age of the line, nor that 12 heavy wires had been removed from them within a comparatively short time before the accident. The poles and wires belonged to the Edison Electric Illuminating Company of Boston, and the defendant was doing the work of removal under a written contract with the latter company.

"On the morning of the accident, the linemen, acting under a general order, were untying the wires from the tops of the poles. One of the linemen, Pring, not having his pliers, the tool used by linemen to untie wires, was ordered by the foreman, MacDonald, to cut the wires on the fourth pole, which he did. At the time the wires were cut at the fourth pole, the wires on the fifth pole had been untied, and the plaintiff was on the top of the sixth pole and did not know of the cutting. Dorchester street, upon which the remaining seven poles were located, takes at this point where the sixth pole was located a sharp dip downhill. When the sixth pole snapped off, it fell in the direction of the seventh and remaining poles."

In addition to the above, it should be said that there was some evidence showing, not only that MacDonald was giving orders to the men, but also one Leyden. It is claimed by the plaintiff that the fact that the pole was decayed was within the rules with reference to the duty to furnish safe conditions to work in; that the defect of rottenness might have been discovered by reasonable inspection; that it was the company's duty to inspect; that there was no assumption of risk on the part of the plaintiff; that there was error in the court's refusing to permit the plaintiff to show that there was a custom for linemen working under the circumstances shown by the case not to inspect poles for interior defects; that there was also error in the court's refusing to permit the plaintiff to testify that he relied on MacDonald or Leyden to inform him whether or not the line was an old line; and that there were other errors which have not been particularly brought to our attention. The view we take of the case, however,

relieves us from the necessity of passing on any question except the broad one that the court erred in directing the jury to return a verdict for the defendant, and on this solely with reference to the statutory topic of superintendence. We will direct that the judgment be reversed and a new trial had on only the counts which are based upon the statute, which is found in Rev. Laws Mass. c. 106, § 71, as follows:

"If personal injury is caused to an employee, who, at the time of the injury, is in the exercise of due care, by reason of: * * *

"Second, The negligence of a person in the service of the employer who was entrusted with and was exercising superintendence and whose sole or principal duty was that of superintendence, or, in the absence of such superintendent, of a person acting as superintendent with the authority or consent of such employer."

Clearly Munroe was not at fault for not ascertaining that the pole was rotten. None of the cases cited are analogous for various reasons. The rottenness was concealed by a brick sidewalk. Under the general rule, as settled by the Supreme Court over and over again, a person employed is not bound to use reasonable care to ascertain the safety of what belongs to his employer, and is bound only by what he "knows or ought to have known"; and, in the present case, there is no sufficient evidence showing that a different rule applies to linemen. Even if there were any evidence of value that generally linemen are expected to examine poles before climbing them to ascertain whether decayed or not, it would not apply to the present case, because, first, the linemen here were not furnished with tools to enable them to dig out the sidewalk around the poles, and, second, the orders given them by Leyden and MacDonald prohibited them from doing anything of that nature. As soon as they were on the ground, the linemen were driven up the poles in haste, and under persistent orders, with oaths, to "hump themselves," so to speak. Therefore the circumstances precluded any examination by them, whatever might have been the custom usually, and whatever the circumstances of the decisions cited by the defendant.

However, it seems to us to be of no consequence whether Munroe should have examined the condition of the pole as to rottenness or not, because its rottenness was not the causa causans. If the work had been done in a proper manner, the accident would not have occurred. The plaintiff had a right to go to the jury on the proposition that the proper manner was, first of all, to have untied all the wires. If this had been done, the pole would have stood, so far as any evidence in the case shows otherwise. There were 13 poles in all. Munroe was on the sixth pole. The poles from the sixth to the thirteenth were on a downhill road, so that the tendency of seven poles was to pull the sixth pole towards them and downhill. The wire was cut on the fourth pole, and had been untied on the fifth pole, so there was nothing to hold the sixth pole, on which the plaintiff was, against the downhill pull of poles 7 to 13 each, inclusive. Therefore, as the record shows, when the sixth pole snapped off, it fell, and, as of course, in the direction of the seventh pole.

The plaintiff puts this proposition as follows:

"The plaintiff contends that the manner in which the work was conducted by the foreman, MacDonald, was negligent, and the negligence brought about the injury to the plaintiff."

He puts this at our bar in such a way as to preclude all other efficient causes, because, he says:

"This ordering of Pring to cut the wires on the fourth pole was the negligent act of the superintendent which the plaintiff avers brought about his injury."

The main question in the case is whether MacDonald or Leyden was a person in the service of the Ley Company "entrusted with and exercising superintendence, and whose sole or principal duty was that of superintendence"; or, second, one who, in the absence of such superintendent, was a person "acting as superintendent with the authority or consent of such employer." These words of the statute seem to represent plain English, and so plain that they neither need, nor are capable of, categorical definition. So far as we have examined the Massachusetts cases, none of them undertakes to give such a definition. Many of them have been engaged in determining, not whether under the circumstances of the case there was any person "exercising superintendence," but more particularly with reference to the questions arising from the use of the words "sole or principal." Some have stated certain inclusive rules; that is, rules which show that certain persons are within the statute. But none of them, as we have said, assumes to give a complete definition. For the reason we have stated, to do this is not practicable.

The facts of the present case are that no one undertakes to testify that either MacDonald or Leyden did any work with their hands. They were giving orders, and were engaged entirely in so doing, and nobody else was giving orders. An illustrative fact is that one witness states that MacDonald was standing on the ground doing nothing excepting giving orders. He did not see him climb any poles, and the witness took his orders from him, and the principal orders were directed to all the linemen. Another one testifies that MacDonald gave him orders, with an oath, to get up the pole and stop his "kidding," and that MacDonald "was in the gutter, looking out for the wires, and giving orders to the ground men in reference to them." Another one testifies that he took orders as a lineman from Leyden and MacDonald; and another one that both MacDonald and Leyden "gave orders," and that MacDonald said: "Get your tools and strip that pole." The record is full of this kind of testimony. There is no question that either MacDonald or Leyden gave the order to cut the wire which resulted in Munroe's injury.

It seems plain therefore that the plaintiff had a right to go to the jury on the issue that MacDonald and Leyden, or one of them, had, so far as doing this particular work was concerned, full charge. They were doing it wholly in accordance with their own notions as to the method of doing it, subject, of course, as every person is who is placed in authority, to the usages and methods of doing work generally, or of doing the particular work of the particular person or corporation whom they represent.

Looking at the various decisions of the Supreme Judicial Court of Massachusetts, it seems to us that the observation of the judge at nisi prius in Malcolm v. Fuller, 152 Mass. 160, 163, 25 N. E. 83, was correct, so far as it went:

"A superintendent is a man having the control, with the power of authority. That is to say, when he speaks, the workmen are to obey, not because he advises them, or requests them, or hopes they will, but because, by virtue of his position, they have agreed to obey him. That is the nature of his authority."

Thus, the question of "exercising superintendence" is one, not of the magnitude of the job, but of the nature and power of the person in charge thereof. One who is on the ground, dissevered from all other authority, and having full power at the time over the work to be done, even though only temporarily, may be "exercising superintendence." McPhee v. Scully, 163 Mass. 216, 217, 220, 39 N. E. 1007. We have carefully examined a number of the decisions of the Supreme Judicial Court of Massachusetts with regard to this topic, and have selected here only the two which seem the most typical of the case before us. Taking together all those which we have examined, we find nothing therein which prevents our making such an application here of the statute in question as its plain English seems to require.

The record raises a question whether MacDonald or Leyden was superintending the work; and, so long as there is a question of that character, it, of course, follows that it is doubtful whether either one of them was. So, also, the case might easily have been made more definite and clear by a very few questions put to the witnesses; but we have here the fact that the plaintiff may well contend that MacDonald and Leyden, one or both of them, were in full charge of the job, giving orders to the men, and apparently "exercising superintendence." Whether one or both united therein may or may not prove of consequence, because the fault in the method of doing the work might have been the joint fault of both.

The result is that the evidence shows that the occasion of the injury to Munroe was the negligent method of doing the work; also, there is enough in the record to entitle the plaintiff in the case against Fred T. Ley & Co. to go to the jury under the provision of the statute which we have cited. Therefore the judgment there must be set aside, and a new trial ordered.

Coming now to the suit against the Edison Electric Illuminating Company, the record shows an agreement between the Ley Company and the Edison Company by virtue of which the Ley Company entered into a contract with the Edison Company to become its general constructor and repairer, and to assume all risks. The nature of this contract was such that the Ley Company might be called on to take up the Edison Company's work, whatever the condition of repair or safety might be. It is difficult to see how, under this contract, the Edison Company could be responsible to the Ley Company for the condition of its poles or anything else; and, if the Edison Company was under no obligation to the Ley Company, it is difficult to see how it could be under obligation to its employés. The plaintiff relies on the

general rule as explained in Pollock's Torts (6th Ed. 1901) 492, 493, and cases cited; Elliot v. Hall (1885) 15 Q. B. D. 305, 315; and on Hayes v. Philadelphia Company, 150 Mass. 457, 23 N. E. 225. It seems to be the statutory rule of Massachusetts that under the employer's liability act any agreement between the owner of premises and the contractor that the contractor will assume all responsibility does not affect the employé of the contractor. Wagner v. Boston Elevated, 188 Mass. 437, 442, 74 N. E. 919, and Sullivan v. New Bedford Gas Company, 190 Mass. 288, 292, 76 N. E. 1048. Nevertheless, it would also seem that the rule on which the plaintiff relies, and even the Massachusetts statute, as interpreted by the Massachusetts courts, cannot apply to the case of a general jobber like the Ley Company here, who itself assumes all responsibility, thus relieving the party with whom it contracts of any duty in the premises.

However, it is not necessary to go into the above questions, because, as we have already stated, according to the plaintiff's case, the causa causans, the truly efficient cause of the injury, was not the condition of the poles, but the negligence of the employés of the Ley Company in the manner in which the work was done. The undoubted condition of the facts and the position taken by the plaintiff himself would prevent him holding a verdict if he received one on any ground except that of the negligence of the Ley Company. Therefore, on this part of the case, we are justified in speaking positively to the effect that the plaintiff has no cause against the Edison Company.

Judgments will be entered as follows:

In No. 698, John D. Munroe v. Fred T. Ley & Company, the judgment is reversed, and the case is remanded to the Circuit Court, with directions to set aside the verdict, and to grant a new trial on such count or counts of the declaration as are based on the second clause of section 71 of chapter 106 of the Revised Laws of Massachusetts; and the plaintiff in error recovers his costs of appeal.

In No. 699, John D. Munroe v. Edison Electric Illuminating Company of Boston, the judgment of the Circuit Court is affirmed; and the defendant in error recovers its costs of appeal.