Decision accordingly.

(159 App. Div. 124.)

GALBALLY v. STRAUSS et al.

(Supreme Court, Appellate Division, First Department. November 14, 1913.)

1. MASTER AND SERVANT (§ 88*)—DUTY OF MASTER—PLACE FOR WORK.

Where a lessee made repairs on a building, and a carpenter employed by him changed the position of the stairway to the cellar, it was not the duty of the lessee, individually, or of a corporation of which he was president to furnish a ladder or other means of access to the cellar for the use of the employés of another contractor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

2. MASTER AND SERVANT (§ 88*) — MASTER'S LIABILITY — WORKS, WAYS, AND MACHINERY.

Where a lessee in repairing a building employed a carpenter who changed the location of a stairway to the cellar, such stairway was not provided by the lessee for the use of the employés of other contractors, so that, where the employé of a plumber using it for his own convenience was injured by reason of its condition, the lessee was not liable either at common law or under the Employers' Liability Act (Consol. Laws 1909, c. 31, §§ 200–204).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

Appeal from Trial Term, New York County.

Action by Patrick H. Galbally against Simon Strauss, individually, Simon Strauss, incorporated, and John R. Johnson. From a judgment

entered on a verdict for plaintiff, plaintiff, Simon Strauss, incorporated, and John R. Johnson appeal. Plaintiff's appeal dismissed, and judgment so far as appealed from by defendants reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

W. Russell Osborn, of New York City, for plaintiff.

Arnold Lichtig, of New York City, for defendants Simon Strauss, Inc., and Strauss.

Theodore H. Lord, of New York City, for defendant Johnson.

SCOTT, J. This appeal comes before us in a somewhat unusual form. At the trial, after the rendition of the verdict, the justice presiding ordered the exceptions to be heard in the first instance at the Appellate Division. Notwithstanding this direction the plaintiff entered judgment, and the defendants apparently acquiesced in this practice, for the case is brought into this court, not by a motion for judgment, but by cross-appeals from the judgment. No order was entered denying a motion for a new trial. We have power, therefore, only to pass upon the exceptions.

The action is for damages sustained by plaintiff while working upon premises held under lease by the defendant Simon Strauss, Incorporated. The evidence would have justified the jury in finding the following state of facts:

Simon Strauss, Incorporated, of which the individual Strauss was president, had leased two buildings which it proposed to use together, virtually as one building, for the purpose of carrying on a wholesale liquor business. To carry out this intent it was necessary to make certain alterations in the buildings, which included connecting the cellar floors, changing the plumbing in the cellars, and removing a staircase leading into the cellar from its position in the center of the reconstructed building, and re-erecting it at the extreme westerly end of the building. The lessee, Simon Strauss, Incorporated, made separate contracts for the items of work involved in these alterations. The plumbing work was contracted for with one Manns, in whose employ plaintiff was when he was injured. The carpenter work, which included the shifting and resetting of the staircase, was contracted for with a man named Johnson. Simon Strauss, the president of the lessee, frequently visited the work; but, while he appears, at times, to have given directions to the plumber's men as to details of their work, it does not appear that he ever gave any instructions to the carpenters or interfered in any way with their work. The carpenter contractor, having cut a new well hole in the floor above the cellar, shifted the staircase, and set it up. To get it clear it was necessary to use considerable force to tear loose the nails by which it had been attached to the floor beams in its old location. They set it up in place in the new well hole, fastening it at the top by driving four nails, two on each side through the upright string pieces into the floor beams. The stairway, as thus placed, was close against the cellar wall. At the foot, along the wall ran an iron sewer pipe, and in order to set

the stairway it was necessary to cut off two or three inches from the foot of one of the string pieces which then rested on the pipe, or on the cement between the pipe and the wall. The foot of the other string piece rested on the concrete floor. It was testified to by expert witnesses, and not contradicted, that this was the proper and customary method of setting up such a stairway.

After it had been thus erected, it constituted the only means of getting into the cellar, and was used for several days by all the workmen employed in the cellar, including plaintiff. It appeared to be solidly placed, and there was nothing apparent to indicate that it was not an entirely safe way. After the stairway had been thus placed and in use for two or three days, the plumber's men found it necessary to run a small water pipe along and partly on top of the sewer pipe; but the string piece of the stair stood in the way. The plumber's foreman, or principal employé, one Kramer, attempted to pull the foot of the stair to one side. He was observed and stopped by the foreman of the carpenter, Johnson, who inserted a couple of small blocks under the bottom step to raise the foot of the stair and hold it up until the water pipe could be put in place. He seems to have realized that this rendered the stair less safe and secure, because he expressly warned Kramer to let him know when he was through. His own testimony is:

"I told Kramer, 'As soon as you are ready to get the stairs to safety, let me know when you are through.'"

Kramer never did let him know, and the stair remained in this condition until it fell. as plaintiff was descending, and produced the injuries for which he sues.

Of course there is a question in the case as to whether or not the stairway was properly and safely erected in the first instance; but the jury would have been justified upon the evidence in finding that it was, and that it was the blocking up which introduced an element of instability which was responsible for the fall of the stair. In either case Johnson, the carpenter contractor, or his employé created the unsafe condition, knew or should have known of the insecurity, and might well be charged with negligence either for creating the unsafe condition or for not having been vigilant in promptly remedying it.

The responsibility of the defendant Simon Strauss, Incorporated, is not so clear. The evidence would justify a finding that it furnished the stairway, and set it up, and permitted it to be used by all the workmen as a way to be used in the progress of their work. Having undertaken to furnish a way for the use of those employed upon the work, and permitted them so to use it, the lessee corporation was bound to furnish a way safe and fit for the purpose for which it was to be used. The lessee corporation stood to the employés of the several contractors in a position analogous to that in which a general contractor stands to the employés of his subcontractors, and in such a case a general contractor who furnishes a way for the use of the employés of his subcontractors is bound to furnish one which is safe, suitable, and proper. Boyle v. Robinson Co., 154 App. Div. 1, 5, 138 N. Y. Supp.

695, and cases cited. It has been held, however, in cases arising under the common-law rules that, when a master, or a general employer, has no knowledge or experience in the business of furnishing appliances or erecting structures, and contracts with a competent party to furnish or erect them, he is not responsible for defects that may exist in them, unless he knew or had reason to know that such defects existed. Burke v. Ireland, 26 App. Div. 487, 50 N. Y. Supp. 369. Hence it is argued in the present case that, assuming that the lessee of the building undertook to furnish a way, and was bound to furnish a safe one, and that the stairway as first erected was not safe, suitable, and proper, yet that the lessee was relieved from responsibility for its insufficiency because it had intrusted its erection to a competent contractor. Our attention is called to a recent amendment to the Labor Law which seems to negative this contention. By Laws 1910, c. 352, there was added to section 200, subdiv. 2, of the Labor Law, the following:

"If an employer enters into a contract, written or verbal, with an independent contractor to do part of such employer's work, or if such contractor enters into a contract with a subcontractor to do all or any part of the work comprised in such contractor's contract with the employer, such contract or subcontract shall not bar the liability of the employer for the injuries to the employees of such contractor or subcontractor, caused by any defect in the condition of the ways, works, machinery, or plant, if they are the property of the employer or are furnished by him, and if such defect arose, or had not been discovered or remedied, through the negligence of the employer, or of some person intrusted by him with the duty of seeing that they were in proper condition."

This provision, so far as we know, has not yet been construed by any court in this state; but an identical statute has been considered and construed by the Supreme Court of Massachusetts. In Sullivan v. New Bedford Gas & Electric Co., 190 Mass. 288, 76 N. E. 1048, it was said:

"The effect of Rev. Laws, c. 106, § 76, is in our opinion to make certain that the intervening contract does not prevent the owners owing a duty directly to employés of the contractor."

This, we think, is the true construction to be given to the provision quoted from our own statute. It does not enlarge the obligation of an owner circumstanced as was the lessee corporation in the case at bar, and does not purport to enlarge such obligation. It merely provides that, if an owner or general contractor assumes the obligation of furnishing safe ways and appliances, he may not shield himself from liability for his failure to carry out that obligation by showing that he has intrusted the work to an independent contractor, no matter how competent. If the independent contractor does the work negligently or improperly, his fault is attributable to the owner. To apply the statute to the present case, if Johnson, the carpenter contractor, erected and fastened the stair improperly, and the plaintiff's injuries resulted from his default in this regard, the lessee corporation is liable for the consequences of such default, and may not escape liability by showing that it intrusted the work to Johnson under an independent contract.

If, however, the jury should be of opinion, as under the evidence it

well might be, that the stair was properly erected in the first instance, and as so erected was a safe, suitable, and proper way, and became unsafe only in consequence of the temporary interference with its stability by the act of Johnson's foreman as detailed above, and that the lessee corporation had no actual knowledge or notice of the unstable condition thus produced, and that such condition had not existed for a long enough period to impute knowledge thereof to said lessee or its president, then the lessee corporation would not be liable, for an owner who has once furnished a safe, suitable, and proper way is not bound at his peril to watch it every moment, and is not liable if the employés of a contractor, or a stranger, tampers with it wrongfully so as to render it unsafe. All the duty that an owner owes under such circumstances to the employés engaged on the work is to use reasonable diligence to see that the way or appliances is not tampered with to its injury, and, if it is so tampered with, to be reasonably diligent to again make it safe. These are the principles upon which, as we consider, the liability of the defendants in the present action depends. They were not clearly expounded to the jury. We do not stop to pick out specific errors which in our opinion require a reversal of the judgment appealed from. There are several of them. The court dismissed the complaint as against the defendant Simon Strauss, individually, and as we think rightly. Whatever he did was done as president of the corporation defendant and in its behalf, and whatever negligence, if any, can be charged against him was passive rather than active. Although the plaintiff has appealed from so much of the judgment as so dismisses the complaint, the judgment as entered does not dismiss it. There is therefore nothing to which plaintiff's appeal can attach.

The plaintiff's appeal must therefore be dismissed, and the judgment in so far as appealed from by the defendants reversed, and a new trial granted, with costs to said defendants appellants to abide the event.

McLAUGHLIN, J., concurs.

INGRAHAM, P. J. [1, 2] I concur in the reversal of this judgment on the ground that I can find no evidence to show that the defendant Strauss, either individually or as president of the defendant corporation, ever furnished this stairway as a way, work, machinery, or plant for the use of his employés or the employés of other corporations in the building. The mere fact that, after the stairway was removed by Johnson, the carpenter, and placed in position on Thursday or Friday before the accident, employés of other contractors used it going to and from the cellar does not, as I view the case, justify a finding that either of the defendants furnished this stairway as a way for the employés of other contractors to use in the performance of their work. Neither of the defendants undertook to furnish a stairway or ladder for use in the building. The stairway was not completed at the time of the accident; but the alterations were being completed, and the carpenter in carrying out his contract had changed the position of the stairs. It was not the duty of either Strauss, individually, or the corporation of which he was the president to furnish a ladder or other means of access to the cellar, and neither he

nor it undertook to perform that duty. When the plumber's workmen used the stairs in the uncompleted condition in which they were at the time of the accident, which was on the Monday following the time that the stairs were moved, they did it for their own convenience. They could have put a ladder down in either of the openings ·to the cellar, or provided any other means that they wished. There was certainly nothing to suggest to the lessee that any of the workmen depended upon it to furnish them with ways or a ladder for use in getting to the cellar. It seems to me this case is entirely different from a case where a principal contractor furnished an elevator, ladder, scaffolding, or other appliance for the use of all the workmen employed in the building. Here was a building to be altered to suit the tenant's business. One of the contractors had moved this stairway from one opening to another, and before it was completely installed the other workmen had used it for gaining access to the cellar. It was not provided by the lessee for the use of the workmen of the contractors, and it seems to me that neither at common law nor under the Employers' Liability Act was the lessee liable because it collapsed while being so used.

For these reasons I concur in the reversal of the judgment.

LAUGHLIN and CLARKE, JJ., concur.