JOHN J. HAYES *vs.* PHILADELPHIA AND READING COAL AND IRON COMPANY.

Essex. November 7, 1889. — January 2, 1890.

Present : FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Personal Injuries — Negligence — Implied Contract.*

In an action to recover for personal injuries occasioned to the plaintiff through the alleged negligence of the defendant, there was evidence that the defendant, a

coal company, had agreed to deliver a cargo of coal alongside a customer's wharf; that according to the course of dealing between them the coal was sent in a barge fitted up with masts, stays, and other appliances peculiarly adapted for the unloading of coal at that wharf, and admitted by the defendant to be for that purpose; that the customer proceeded as usual to use such appliances in discharging the coal, being himself supplied with and furnishing only the supplementary tackle; and that the plaintiff, while employed by the customer to assist in so doing, was injured by the breaking of one of the masts by reason of an improperly secured stay. *Held*, that while a finding would be warranted that it was a part of the contract between the defendant and the customer that the coal should be delivered at the wharf in a barge provided with masts, stays, and other appliances for use by the customer in unloading it, it was enough to entitle the plaintiff to recover if the appliances were actually intended by the defendant to be used by its customers for that purpose, and if the plaintiff's employer as such a customer was invited to use them.

TORT for personal injuries occasioned to the plaintiff through the alleged negligence of the defendant. Trial in the Superior Court, before *Sherman*, J., who reported the case for the determination of this court, the report, so far as material to the point decided, being as follows.

There was evidence tending to show the following facts. The plaintiff at the time of the accident was engaged in unloading coal from a barge belonging to the defendant, and lying at a wharf in Manchester, owned, together with an adjoining coal-shed, by one Knight, by whom the plaintiff was employed. Knight was a coal dealer, and had purchased coal from the defendant for ten or twelve years, and for eight years or more coal so purchased by him had been sent to his wharf by the defendant in a barge, which was there made fast and turned over to him to be discharged. This barge was fitted with masts supported by guys, and with a boom for hoisting, the lower end of which was secured to one of the masts at a point near the deck. The only tackle ever supplied by Knight were the buckets and falls of rope used in hoisting coal out of the barge upon a platform which rested upon the wharf, and which was about eighteen or twenty feet above it and extended out over the end of the wharf and above a hatch in the deck of the barge, being supported at the outer end by tackle running from the masts of the barge and forming a part of its rigging. This tackle on the masts was peculiarly adapted and constructed to support this and similar platforms that might be put out from the coal wharves of customers for the reception of coal.

On July 9, 1888, Knight gave an order to the defendant's agent for six hundred tons of coal, which the agent at once acknowledged by a letter to him, reciting that "we have entered your order for" that amount of coal "alongside your wharf." Subsequently, on July 15, the coal was delivered in the barge alongside Knight's wharf, and there left by the defendant's servants. The defendant's agent, by whom the coal was despatched to Knight, and whose duty it was in part to oversee the loading and unloading of coal from its barges, "did not in this or in any case contract to discharge his coal; never undertook to furnish Mr. Knight any appliances on the barge for discharging the cargo," but supposed that these appliances on the barge "were used; knew that they were there for that purpose, and that they were put there by the company to be used if the consignee chose to use them; cannot say that I knew that Knight used these appliances in unloading his coal; supposed that he did." Knight testified that "there was no arrangement whatever between myself and the company, and no understanding by which I should supply any tackle to the barge; I always implied that I had the right to make use of the rigging on the barge for my purposes, but never had any talk with the proprietors, owners of the barge, or the agents, with regard to the barge; I said I 'implied' I had a right to support my staging from those masts; it was never granted me; no objection was ever made to my using the rigging of the barge for that purpose, and I continued to use it during all the time I was buying coal from the company during the past eight years."

On the morning of July 16, the plaintiff and a fellow workman were standing on the outer edge of the platform, dumping the coal as it was hoisted out of the barge into a wheelbarrow on the platform, which, when thus loaded, was wheeled away by still another workman into the coal-shed. While they were so engaged, the mast to which the boom was attached broke, by reason of an insecurely fastened stay, the platform fell, and the plaintiff was thrown into the hold of the barge, receiving the injuries in question.

At the conclusion of the evidence, the defendant requested the judge to rule that the action could not be maintained, and to direct a verdict for the defendant. This request was made solely

upon the ground that there was no evidence to authorize the jury to find an implied agreement between the defendant and Samuel Knight that the defendant would furnish the tackle and appliances which were upon the barge for use in unloading the coal. The judge declined to rule as requested, and submitted the case to the jury under other instructions not objected to, and the defendant excepted; and the jury returned a verdict for the plaintiff.

If the ruling was properly refused, judgment was to be entered upon the verdict; otherwise, a new trial was to be granted.

*R. M. Morse, Jr. & C. S. Hamlin,* for the defendant.

*H. F. Hurlburt,* for the plaintiff.

FIELD, J.   The defendant excepted to the refusal of the court to rule that the plaintiff on the evidence could not maintain the action. The report states that the defendant requested this ruling " solely upon the ground that there was no evidence to authorize the jury to find an implied agreement between the defendant and Samuel Knight that the defendant would furnish the tackle and appliances which were upon the barge for use in unloading the coal." See *Pingree* v. *Leyland,* 135 Mass. 398. The court, having refused so to rule, "submitted the case to the jury under instructions not objected to." The case has been argued in this court upon the theory that it was necessary for the plaintiff to prove a contract between the defendant and Knight that the defendant should deliver the coal at Knight's wharf in a barge or vessel provided with masts, stays, and tackle, which Knight should have the right to use for the purpose of unloading the coal. But it was enough, we think, if the plaintiff proved that the tackle and appliances on the barge were actually intended by the defendant to be used by its customers in delivering coal, and were furnished by the defendant for this purpose, and if Knight as a customer and purchaser of coal was invited by the defendant to use them in unloading his coal. Of this there was abundant evidence. See *Elliott* v. *Hall,* 15 Q. B. D. 315.

Indeed, we think that, from the long course of dealing between Knight and the defendant, as shown by the evidence, and from the admitted purpose for which the tackle and appliances were put into the barge, and from the use which Knight had been accustomed to make of the tackle and appliances in unloading cargoes of coal, it was competent for the jury to find that it was

a part of the contract that the coal should be delivered alongside Knight's wharf in the usual manner, and with the usual appliances for unloading it, and that he might use these appliances in unloading it. It is not contended that there was no evidence of negligence on the part of the defendant, if the defendant was under any duty to Knight to furnish him with masts, stays, and tackle for unloading coal in the manner in which this coal was unloaded.                                    *Judgment on the verdict.*