## SLIP SCARF CO. v. WM. FILENE'S SONS CO.

(Circuit Court of Appeals, First Circuit. June 5, 1923.)

No. 1622.

1. **Exceptions, bill of ⬅36(3)—May be filed within 20 days from denial of new trial.**

    Under District Court rule 19, it is proper to allow bills of exception to be filed within 20 days from the denial of motion for new trial, and to allow extension of time for this purpose, if applied for within 20 days.

2. **Appeal and error ⬅995, 1122(2)—Circuit Court of Appeals does not weigh evidence on writ of error.**

    The Circuit Court of Appeals, when an action at law is before it on writ of error, does not weigh evidence and find facts.

3. **Appeal and error ⬅842(1)—Exception to denial of motion for new trial held to raise no question of law.**

    An exception to a denial of a motion for new trial, on the grounds that the jury misinterpreted and misapplied or disregarded the instructions, and that the verdict was against the evidence and the weight of evidence and the law, *held* to raise no question of law for the consideration of the Circuit Court of Appeals.

4. **Appeal and error ⬅248, 501(1), 719(1)—Errors must be excepted to and set out in assignment of errors.**

    All errors not apparent on the face of the record, but arising during the course of the trial, must be excepted to at the time, duly preserved in a bill of exceptions, and be set out in an assignment of errors.

5. **Appeal and error ⬅237(5)—Sufficiency of evidence held not reviewable, in absence of motion at trial.**

    Where plaintiff did not, by motion for a directed verdict at the close of the evidence, or by an appropriate request before the case was submitted to the jury, question the sufficiency of the evidence, either as to the whole or some branch of the case, the question whether there was evidence from which the jury could find the facts necessary to sustain the verdict was not reviewable.

6. **Patents ⬅314—Finding that process was new not inconsistent with finding of noninvention.**

    Finding that method of stitching used in making neckties was new was not inconsistent with finding that patent for the necktie did not involve invention.

7. **Patents ⬅324(5)—Plaintiff in infringement suit not prejudiced by failure to properly submit issue on which defendant entitled to prevail in any event.**

    In a patent infringement action, failure to embody a feature of certain claims in the patent in the submission of a question to the jury was not prejudicial to plaintiff, when, on such issue, defendant was in any event entitled to directed verdict.

8. **Patents ⬅328—1,005,835, claims 1, 2, 3, held not infringed.**

    Hill patent, No. 1,005,835, as to improvement in neckties, claims 1, 2, 3, *held* so limited in respect to the element of smoothness as not to embrace a neckband lined with satin or similar fabric; hence not infringed by defendant's ties, having a smooth satin strip or facing used on the inside of the neckband.

9. **Patents ⬅324(5)—Charge in infringement suit held not prejudicial, where jury found in appellant's favor on the question charged on.**

    In patent infringement action, plaintiff was not harmed by a charge as to the novelty of a method, where the jury found in his favor as respects such claimed novelty.

10. **Patents &#9683;36—Noninvention provable by preponderance of evidence.**

Lack of invention, as distinguished from anticipation, need be proved by defendant only by a fair preponderance of evidence.

11. **Patents &#9683;33—Evidence of extensive use, etc., admissible only in doubtful case.**

Evidence of the prior difficulties that were overcome by the patented invention, of the fact that it filled a want not adequately filled before, that it became public and went into extensive use, that the trade acquiesced in the patent by taking licenses, etc., and that others had tried and failed to meet the difficulties, *held* admissible in determining the question of invention only in doubtful cases.

12. **Patents &#9683;33—Where certain claims were clearly lacking in invention, refusing request for instruction that jury might consider evidence admissible only in doubtful cases was not error.**

In patent infringement action, where certain claims were clearly lacking in invention, refusing a request allowing the jury to consider, as to such claims and other claims evidence as to invention, which was admissible only if invention was doubtful, was proper.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Action by the Slip Scarf Company against the Wm. Filene's Sons Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Alan D. Kenyon, of New York City (Alfred H. Hildreth, of Boston, Mass., on the brief), for plaintiff in error.

Jacob J. Kaplan, of Boston, Mass., and Clarence O. McKay and Edwin J. Prindle, both of New York City (Dunbar, Nutter & McClennen, of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action at law to recover damages for the alleged infringement by Wm. Filene's Sons Company of United States letters patent No. 1,005,835, applied for June 10, 1908, issued October 17, 1911, to the plaintiff, the Slip Scarf Company, assignee of Hill, for an improvement in neckties, and of reissue letters patent No. 14,142, applied for originally on the 21st day of August, 1908, reissued May 30, 1916, to the plaintiff as assignee of Keys, for an improvement in neckwear. The defenses are noninvention, noninfringement, and want of novelty, because of certain alleged prior patents and prior uses.

[1] We are met at the threshold of the case with defendant's motion to dismiss the writ of error, on the ground that the bill of exceptions was "not filed within the time allowed by law or rules of the District Court." It would seem that counsel had misconceived the nature of their motion. Treated as a motion to dismiss, it states no valid ground for dismissal, as the writ was sued out at the term at which final judgment was entered. But if the motion be treated as one to strike the bill of exceptions from the record, on the ground that it was not filed within the time allowed by law or rules of the District Court, the question is of a more serious nature, because the matters

desired to be reviewed are contained in the bill of exceptions. Treating the motion as one of the latter character, we are nevertheless of the opinion that it must be denied.

According to the record, the verdict was rendered November 23, 1921, at the September term of court. On November 25, 1921, and within the three days allowed by rule 16 of the District Court, the defendants filed a motion to set aside the verdict and for a new trial. The cause was then continued from term to term until the March term, 1922, when, on March 30, the motion was heard, and thereafter on May 4, denied. On May 15, 1922, and within twenty days from the denial of the motion for a new trial, the time for filing a bill of exceptions was extended to July 10, 1922, and on May 24 the case was continued to the June term, 1922, when, on July 7, 1922, a bill of exceptions was filed. The cause was then continued to the September term, 1922, when, on November 22, 1922, a substitute bill of exceptions was filed and allowed, and at the same term, on December 4, 1922, judgment was entered for the defendant.

Rule 19 of the District Court is as follows:

"Bills of exceptions to any ruling of the court may be filed, and notice thereof in writing given to the adverse party within twenty days after the ruling is made, or in case of rulings made during a trial or hearing on the merits within twenty days after the verdict of the jury or finding by the court, unless the court or judge shall otherwise order; and it or he may for good reason allow a period therefor beyond the term or after judgment."

According to the letter of the rule, a bill of exceptions is to be filed within 20 days after the verdict of the jury. But where a motion for a new trial is interposed, the verdict, as well as any judgment that may have been entered thereon, becomes contingent until the motion has been passed upon and determined. Until then it cannot be known that there is any occasion for filing a bill of exceptions, and, this being so, no good reason can exist for saying that the time for doing so has begun to run or is past. It has been the practice in this circuit, as well as in other circuits, to allow bills of exceptions to be filed within 20 days from the denial of a motion for a new trial and to allow an extension of time for this purpose, if applied for within the twenty days. Merchants' Insurance Co. v. Buckner, 98 Fed. 222, 39 C. C. A. 19; Kentucky Distilleries & Warehouse Co. v. Lillard, 160 Fed. 34, 87 C. C. A. 190; Mahoning Valley Ry. Co. v. O'Hara, 196 Fed. 945, 116 C. C. A. 495; Tullis v. Lake Erie & W. R. Co., 105 Fed. 554, 557, 44 C. C. A. 597.

In Kingman v. Western Mfg. Co., 170 U. S. 675, 678, 680, 18 Sup. Ct. 786, 42 L. Ed. 1192, the question as to the effect of a motion for a new trial upon the running of the time within which a writ of error must be prosecuted or an appeal taken was under consideration. A statute of Nebraska provided that applications for new trial should be made at the term when the verdict was rendered, and within three days after verdict, unless unavoidably prevented. In that case, the court said:

"The motion for new trial in this case was filed within three days after the return of the verdict, and seasonably within the rule of the state stat-

ute, or the common-law rule, and it is said, within the rule enforced by the United States courts in that district. No leave to file it was required, and as it was entertained by the court, argued by counsel without objection, and passed upon, it must be presumed that it was regularly and properly made. This being so, the case falls within the rule that if a motion or a petition for rehearing is made or presented in season and entertained by the court, the time limited for a writ of error or appeal does not begin to run until the motion or petition is disposed of. Until then the judgment or decree does not take final effect for the purposes of the writ of error or appeal."

See, also, on this subject, United States v. Ellicott, 223 U. S. 524, 32 Sup. Ct. 334, 56 L. Ed. 535; Texas P. R. R. v. Murphy, 111 U. S. 488, 4 Sup. Ct. 497, 28 L. Ed. 492; Title Guaranty Co. v. General Electric Co., 222 U. S. 401, 403, 32 Sup. Ct. 168, 56 L. Ed. 248.

If a motion for rehearing will operate to stay the running of the time fixed by statute within which to prosecute a writ of error or appeal, we think that it will operate with equal effect to stay the time fixed by rule of court for filing a bill of exceptions.

At the close of all the evidence, the defendant asked the court to direct a verdict in its favor, assigning numerous grounds, one of which was that claims 1, 2, and 3 of the Hill patent were not infringed by the structures of the defendant. This was denied, subject to the defendant's exception. The plaintiff did not ask for a directed verdict as to any of the claims in either patent. The case was submitted to the jury, which returned a verdict for the defendant, and also made certain special findings in answer to specific questions submitted to them by the court.

In the Hill patent, claims 1, 2, 3, 4, 8, 11, 13, and 15 were put in issue. Of these claims, 1, 2, and 3 differ from the remaining claims, in that the neckband, or intermediate section of the tie, is not only relatively thin, but relatively smooth as compared with the end sections; whereas, in the remaining claims, the neckband, or intermediate section, is only relatively thin as compared with the end sections. The first question submitted to the jury comprised only the elements embodied in claims 4, 8, 11, 13, and 15, and read as follows:

"1. Was an interlining thinner in the neckband than in the ends used between folds of silk or other material to which it was fastened by stitching, in making neckties before June 10, 1908?"

This question the jury answered "Yes," thereby finding the combination of elements constituting claims 4, 8, 11, 13, and 15 were old.

The next question as to the Hill patent was No. 3, and read as follows:

"3. Was the improvement in neckties shown by the Hill patent of such character as to involve invention?"

To this question the jury answered "No."

The remaining question as to the Hill patent was No. 5, and read as follows:

"5. Is the Hill patent void for lack of novelty?"

This question the jury answered "Yes."

Before submitting its case as to the Keys patent, the plaintiff withdrew claim 6, and went to the jury on claims 4 and 5 only. These claims differ from one another in one particular. In claim 4 the interlining is required to be "thinner in the neckband than in the tying ends." While in claim 5, which is the broader claim, the character of the interlining is not required to be thinner in the neckband; it may be of the same thickness throughout its length. In every other respect the claims are alike, and their elements are stated in question 2, which was submitted to the jury as follows:

"2. Were rows of stitching extending lengthwise of the neckband near each edge, brought together in a point near the edges and engaging the cover and interlining, in use before August, 1908?"

To this question the jury answered "No," thereby finding that stitching of the character described in these two claims was new—whether used in connection with an interlining that was thinner than the neckband, or of uniform thickness throughout its length.

The next question under this patent was No. 4:

"4. Was the improvement in neckties shown by the Keys patent of such character as to involve invention?"

This the jury answered "No."

The remaining question in regard to this patent was No. 6:

"6. Was the Keys patent void for lack of novelty?"

The answer was "Yes."

The record does not show but what these questions, both as to scope and substance, were submitted with the approval of both parties. On the coming in of the verdict, the plaintiff moved to set aside the verdict and for a new trial, on the ground (1) that the jury misinterpreted and misapplied, or disregarded the instructions given them by the court; (2) for the reason that the verdict "is against the evidence and the weight of the evidence and the law." This motion was denied and plaintiff excepted.

In its assignments of error, the plaintiff complains that the court erred in overruling the motion for a new trial, in certain portions of its charge to the jury, in the denial of certain of plaintiff's requests, in omitting from question 1 the feature in claims 1, 2, and 3 of the Hill patent "of the intermediate or central section of the necktie relatively smooth, or substantially smoother, * * * than the end portions or sections of the necktie," and that the answer of the jury to question No. 2, in which it found that the stitching called for by claims 4 and 5 of the Keys patent was new, was inconsistent with the verdict for the defendant and with the finding of the jury to question No. 4 that the improvements shown in the Keys patent did not involve invention.

[2-5] The case has been presented by the plaintiff, both in brief and argument, as though it were before us on appeal and we were to weigh the evidence and determine whether the facts found by the jury were correct or otherwise, as well as to review the rulings of law. This has resulted in placing an undue amount of labor on the court in its endeavor to ascertain just what the objections are which it is called

upon to consider. If anything is well established, it is that this court, when an action of law is before it on a writ of error, does not weigh evidence and find facts, and that an exception to a denial of a motion for a new trial, at least on any such grounds as presented by the motion in this case, raises no question of law for its consideration (Railway Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58; B. & M. Railroad v. Dutille, 289 Fed. 320, decided by this court May 16, 1923), and that all errors not apparent on the face of the record but arising during the course of the trial must be excepted to at the time, duly preserved in a bill of exceptions, and be set out in an assignment of errors (Ana Maria Sugar Co. v. Quinones, 251 Fed. 499, 163 C. C. A. 493; Id., 254 U. S. 245, 41 Sup. Ct. 110, 65 L. Ed. 246). As the plaintiff did not by motion for a directed verdict at the close of the evidence, or by an appropriate request before the case was submitted to the jury, question the sufficiency of the evidence, either as to the whole or some branch of the case, no assignment is properly before us presenting the question whether there was evidence from which the jury could find the facts necessary to sustain the verdict. Under such circumstances, the presumption is that ample evidence was submitted to warrant the finding of all essential facts. Head & Dowst v. Breeders' Club, 75 N. H. 449, 450, 75 Atl. 982; Dole v. Thurlow, 12 Metc. (Mass.) 157.

[6] If the answers to the second and sixth questions, relating to the Keys patent, are inconsistent with each other, that does not affect the verdict as to either the Keys or the Hill patent, for the jury found, in answer to the third and fourth questions, that neither patent involved invention. This finding alone is sufficient to sustain the verdict as to both patents. None of the special findings were inconsistent with the finding of noninvention, or the verdict which embodies it. The evidence in the case was sufficient to support this finding as to both patents apart from the presumption to that effect above referred to.

[7] Although no objection was made or exception taken to the scope of the first question, or its submission as framed, the plaintiff now contends that it was prejudiced by its submission without embodying therein the feature of a "relatively smooth neckband" contained in claims 1, 2 and 3 of the Hill patent. It also raises substantially the same question by an exception to the charge, claiming that the court therein failed to give weight to this feature of these claims. There are several answers to this contention, both as to the scope of the question submitted and the charge given. One is that plaintiff did not object to the question in any particular but acquiesced in it. Another is that, when excepting to the charge, it failed to call the court's attention to the feature of the patent which it claimed had been overlooked, so that it might correct its charge before the jury retired. But, notwithstanding this, the court, on the exception being taken, told the jury that in stating the claims of both the Keys and the Hill patents it did not undertake to tell them what the entire scope of the patents was, but what seemed to be their predominant features; that there might be other matters claimed and invented in the patents, and that they were the judges as to that, and might say that they regarded other things in the patent as more important. This additional instruction having .

been given, the plaintiff apparently acquiesced in it as fully meeting his objection.

[8] Then again we do not think the plaintiff was harmed or prejudiced in respect to these matters, for the defendant was entitled to have its motion for a directed verdict as to claims 1, 2 and 3 (the only claims of the Hill patent now before us) granted, and for this reason: The court instructed the jury that the articles sold by the defendant: (Plaintiff's Exhibit 4) infringed claims 1, 2, and 3 of the Hill patent, as well as the other claims of that patent, and withdrew the question of infringement from the consideration of the jury. In this, so far as these claims are concerned, we think the court below was in error. These claims, when construed in the light of the specification, are so limited in respect to the element of smoothness as not to embrace a neckband lined with satin, or similar fabric, like that used on the neckband of neckties asserted to be infringing articles (Plaintiff's Exhibit 4).

In the specification of the Hill patent, this smooth feature of the neckband is described as obtained by the use of sizing of different kinds applied to the thinner portion of the interlining or to the outside cover of the neckband, and the application of heat and pressure melting the sizing, causing it to impregnate the outer cover on both sides of the neckband and form a smooth surface. In the alleged infringing articles (Plaintiff's Exhibit 4), a smooth satin strip or facing is used on the inside of the neckband, rendering that side smooth or smoother than the covering of the tying ends. In the specification of the Hill, patent, the patentee makes a disclaimer in which he says:

"I do not here claim as my invention the specific embodiment of my broad invention, wherein the neckband section of the cover, or a portion; thereof, is made of antifriction material, different from the material of which the remaining part of the cover is made."

This, we think, was a disclaimer on his part of a satin or similar fabric for a facing upon a neckband, different from the material or fabric of the tying ends; that, when the claims are so construed, the articles relied upon as infringements do not infringe; and that this is so as a matter of law. Holding, as we do, that claims 1, 2, and 3 of the Hill patent are not infringed, it is plain for this reason also that the plaintiff was not prejudiced in regard to these claims by any action of the court taken during the course of the trial, for the defendant's motion for a directed verdict as to them should have been granted.

[9] In the course of his charge to the jury, the court, in speaking of the Keys patent, used the following language:

"Now, these women who made the ties say that there was nothing novel in 1908 either in the side stitching or finishing them off in a slant or bringing them together in a V; that they were mere workroom expedients, and that they had been done."

The court also said:

"Whether that is true, and whether this stitching of the Keys patent had been known and manufactured and used by other persons before he undertook to patent it in 1908, is for you to say. If it was, you will invalidate the patent on that ground, if you are clearly satisfied of it, for anticipation."

The plaintiff was not harmed by this charge, for in answer to the second question submitted, which specified the particular stitching called for in claims 4 and 5 of the Keys patent, it was found that such stitching was new, and not in use before August, 1908—a finding in the plaintiff's favor.

The plaintiff also complains that the court erred in the following portions of his charge:

"The next defense made to the Keys patent is that it was anticipated by the structures made by McLoughlin and by Kaskel, and perhaps by some other persons. The same witnesses who testified to the anticipation of the Hill patent also testified to structures that, as I remember their testimony—and what the effect of it was is entirely for you to say—would, if their testimony is accepted, seem to have been an anticipation of the Keys patent. In other words, these women say that there was nothing novel in 1908; that the side stitching was very old; that there had always been side stitching; and they produced exhibits which show side stitching. I think that the Dewey tie shows side stitching, although you will look at it. Certainly, as I recall the testimony, one of the earlier exhibits clearly showed side stitching that met an inner band. Of course, whether the exhibits are true or false is for you to decide; but one of those early exhibits, which was said to be of a date antecedent to both of these patents, showed a side stitching which met the inner lining along the edges."

Whether the court was mistaken in saying that the same witnesses who testified to anticipation of the Hill patent also testified to structures that would, if their testimony was accepted, seem to have been an anticipation of the Keys patent, or not, did not mislead the jury to the prejudice of the plaintiff, for the jury found as above stated, that the stitching of the Keys patent was new—a finding in its favor.

[10] An exception was also taken by the plaintiff to the following portion of the charge, on the ground that it failed to properly state the character of proof necessary to sustain the defense of noninvention:

"When it comes to invalidating the patent for lack of invention—that is, because the step is nothing but a skilled workman's step—there the burden is still upon the defendant to satisfy you that the patent does not involve invention; but there it is sufficient if they satisfy you by a fair preponderance of the evidence. * * * If they satisfy you to that effect, as I have told you, the burden of proof on the part of the defendant is sustained, and you should invalidate the patent for lack of invention."

"The questions as to the patent are whether the defendant has satisfied you · by a fair preponderance of the testimony that the patent is void for lack of invention."

Counsel for plaintiff has failed to point out wherein this charge is erroneous. We do not mean to say that he does not offer any argument in his brief where he has attempted to treat this matter; but, so far as we can see, nothing that he has said has any direct relation to it. Instead of discussing the character of the proof required of a defendant, where noninvention is the defense, he proceeds to discuss the question as though the defense under consideration was anticipation, which it was not. When the objection was taken the court replied:

"I differentiated, I believe, rather soundly between 'invention' and 'anticipation.' As to anticipation, there is very good reason why the proof of that should be practically beyond reasonable doubt. * * * As to invention, that goes on the preponderance of evidence, and that it what I told them."

The sixteenth request was properly refused. There is nothing to show that the number of witnesses called by the defendant to substantiate the prior uses was small, or that it failed to call other witnesses known by it to have had knowledge of the facts.

[11, 12] The remaining question concerns the refusal of the court to give plaintiff's requests Nos. 20 and 21 relating to the jury's taking into consideration, on the question of invention, the difficulties existing before the invention that were overcome by the patented invention, that it filled a want not adequately filled before, that it became public and went into extensive use, that the trade acquiesced in the patent by taking licenses, etc., and that others had tried and failed to meet the difficulties.

The rule is that the class of evidence above referred to is to be made use of in determining the question of invention only in a doubtful case. Duer v. Corbin Cabinet Co., 149 U. S. 216, 13 Sup. Ct. 850, 37 L. Ed. 707; McClain v. Ortmayer, 141 U. S. 419, 429, 12 Sup. Ct. 76, 35 L. Ed. 800; American Salesbook Co. v. Carter-Crume Co. (C. C.) 125 Fed. 499.

There were three sets of claims in controversy in this case, two sets in the Hill and one in the Keys patent, as to each of which invention was denied. The above requests were general in their nature, and were offered as applicable to all the claims. It is thus apparent that, if the issue of invention was not doubtful, as to some of the claims, the request, if given, would have been prejudicial to the defendant and erroneous. Claims 4, 8, 11, 13, and 15 of the Hill patent—which relate largely to a necktie having a filling composed of three pieces, the intermediate or neck piece being thinner than the end pieces—constituted one of the sets of claims in issue in the court below. These claims, the evidence shows, were clearly lacking in invention. Then the plaintiff, by omitting these claims on this writ, has acquiesced in this conclusion, thereby admitting that the requests were not applicable to them, and that the issue of invention as to them was properly decided without consideration of the class of evidence referred to in the above requests. Such being the case, it was not error to refuse the requests as presented.

The judgment of the District Court is affirmed, with costs to the defendant in error.