J. EDWARD FULLER *vs.* HOWARD B. LOVELL & another.

Suffolk. October 24, 1939. — December 27, 1939.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Contract*, Construction, Validity, Wagering contract. *Equity Pleading and Practice*, Variance. *Interest*.

There was no fatal variance between an allegation in a bill in equity that the plaintiff agreed with the defendant to purchase and carry certain stock for the defendant's account, and proof that the agreement was that the plaintiff should purchase the stock and carry it in his margin account with stockbrokers; nor between an allegation that the plaintiff "purchased" the stock, and proof that it was purchased for the margin account.

Evidence warranted a finding that a contract was made whereby the plaintiff was to purchase and carry in his margin account with stockbrokers shares of a certain stock for the defendant with the right in the plaintiff to sell it if he should think best, the defendant to receive any profit and pay for any loss resulting from the transaction; and such contract was not invalid as a wagering contract.

Under a contract whereby a plaintiff was to purchase and carry in his margin account with stockbrokers shares of a certain stock for the defendant, a provision that the defendant was to pay "interest expense" referred to expense incurred by the plaintiff with the stockbrokers in carrying the stock, and the plaintiff was entitled to recover from the defendant such expense up to a time when he sold the stock but was not thereafter entitled to recover such expense on the amount of the balance due from the defendant to him as a result of his having sold it for less than he paid for it; and, not having given the defendant notice of the sale nor made demand on him for such balance, the plaintiff was entitled to interest at six per cent thereon only from the date of beginning a suit in equity to recover it.

BILL IN EQUITY, filed in the Superior Court on July 16, 1937.

The suit was heard by *Gray*, J. The defendant Lovell appealed from the final decree.

In his brief, the defendant Lovell argued that there was a fatal variance between allegations in the bill that "the plaintiff entered into an oral agreement with the defendant Lovell to purchase and carry [certain stock] for the account of said defendant," and proof of "an agreement that he

would buy the stock on a general margin account at Lee, Higginson & Company and that Lee, Higginson & Company would carry the stock for him"; and between allegations that the plaintiff purchased shares "for the account of the defendant Lovell" in accordance with the agreement, and proof of a purchase of shares to be carried in the plaintiff's margin account.

The case was submitted on briefs.

*C. L. Allen, K. A. Sanderson, & G. B. Redding,* for the defendant Lovell.

*A. P. Lowell,* for the plaintiff.

Cox, J.    This is a bill in equity to reach and apply shares of stock standing in the name of the defendant Lovell (herein called the defendant) in satisfaction of an alleged debt owed by him to the plaintiff. The evidence is reported. G. L. (Ter. Ed.) c. 214, § 24. Rule 76 of the Superior Court (1932). The trial judge made an order for decree in which he set out his findings of fact. The defendant appealed from the final decree, which establishes the debt and provides for the sale of certain stock belonging to the defendant in the event that he does not pay. G. L. (Ter. Ed.) c. 214, § 3 (7).

The judge found that on or about October 15, 1925 (obviously the date should be 1929), the plaintiff told the defendant that he wished to make some money for him, and for that purpose wanted to buy some realty stock for him. The defendant said that he did not have any cash with which to pay for the stock, whereupon the plaintiff said that he had plenty of collateral at "Lee, Higginson Company," and that he would buy and carry the stock and the defendant would not need to produce any money at that time. The defendant authorized the plaintiff to buy and carry two hundred shares of the stock for him, but no binding contract was then made. On November 7, 1929, the plaintiff told the defendant that he had bought two hundred shares of the stock, and at that time the defendant signed the following paper: "11/7/29    J. E. Fuller    On the purchase of 100 shares of U. S. Realty at $82. and 100 shares of same at $83. per share, I agree to pay interest expense, and pay for loss if this occurs, or receive gain. Dividends to go towards expense.

Howard B. Lovell." On October 22, 1929, the plaintiff purchased two or three hundred shares of the stock in question, one hundred shares of which were bought under the authority given by the defendant and for the defendant at a price of $83 a share. On October 25, 1929, the plaintiff purchased an additional two hundred shares, at $82 a share, of which one hundred shares were for the account of the defendant. The balance of the shares purchased on each occasion was for the plaintiff's own account. The total amount advanced by the plaintiff for the account of the defendant for these purchases was $16,500 and a broker's commission of $40. On November 7, 1929, the defendant accepted the plaintiff's statement that the stock had been purchased, and signed the memorandum hereinbefore set out "defining the obligations of the parties as to such purchases." The "two hundred shares were bought in accordance with the authority given by the defendant and ratified or confirmed in the written memorandum of November 7, 1929, and . . . the defendant is liable for any loss actually incurred on a resale of the stock." Thereafter the stock paid dividends which were credited to the defendant's account on statements regularly submitted, and, when the dividends ceased, the defendant was billed for interest charges regularly and he paid them. On October 15, 1929, at the time of the conversation, the plaintiff had a margin account with Lee, Higginson and Company in which he carried a large amount of collateral. For some time prior to this date, and at all times thereafter until the account was transferred to the State Street Trust Company, the account carried ample margin and usually carried separately a large amount of free stock not needed as margin for the plaintiff's debit balance, and the account with the trust company at all times after the transfer to it, in so far as material in the case, carried ample collateral. Upon all the evidence the judge found that the meaning of the language used on October 15, 1929, was that the plaintiff should buy and carry on his account "above-mentioned" the two hundred shares of stock that he was authorized to buy for the defendant. The defendant admitted that the plaintiff was entitled to sell the stock

whenever, in his judgment, it was desirable. The defendant never requested the plaintiff to sell the stock. It was found that the arrangement did not constitute a gambling contract. All the shares, including the plaintiff's, were sold before suit was brought, but there was nothing to show when the defendant's shares were sold. The judge, in his original order, found that the defendant is to be charged with the purchase price of the shares, the commission for buying them and the actual interest paid by the plaintiff on account of their purchase; that the defendant is to be credited with all the dividends received on the stock and with the largest amount received by the plaintiff for the sale of two hundred shares of any of the stock in question at any time after they were purchased. He is also entitled to a credit of $200 paid on account. "There is no dispute between the parties as to the amount of the indebtedness computed in this manner."

In a later order modifying this order, the judge found that no notice was given by the plaintiff to the defendant of the sales of his stock, and no demand was made upon him for the balance due the plaintiff as fixed by the sales. He ruled that the plaintiff is not entitled to interest at six per cent "up until" the date of bringing suit, but that the failure to make demand did not affect the obligation of the defendant under his contract to pay "interest expense." He found further that after the sale of the defendant's shares and the crediting of the sales price to the defendant's account, there remained a large balance on which the plaintiff still incurred "interest expense" within the meaning of the contract, and that the rule to be applied in computing interest is to add the "interest expense" incurred by the plaintiff on the balance. He did not compute the amount of "interest expense" because of the agreement that "if the rule as to interest was determined by the court the calculations could be agreed upon." He allowed the plaintiff interest at the rate of six per cent from the date of bringing suit. In the decree the defendant's counterclaim was dismissed.

1. The defendant contends that there is such a variance between the allegations of the plaintiff's bill and the proof that no decree should have been entered for the plaintiff. In

a bill in equity the material facts and circumstances relied on shall be stated briefly. G. L. (Ter. Ed.) c. 214, § 12. In an action at law the declaration "shall state concisely and with substantial certainty the substantive facts necessary to constitute the cause of action." G. L. (Ter. Ed.) c. 231, § 7, Second. "A bill of this nature [as in the case at bar] on a legal cause of action should set out the cause of action as specifically as is required in an action at law," *Sandford* v. *Wright*, 164 Mass. 85, 87, and "'It is an elementary rule of equity pleading, that the bill must contain a clear and exact statement of all the material facts upon which the plaintiff's right to the relief sought depends, and that he can only introduce evidence of such facts as are thus stated.' *Drew* v. *Beard*, 107 Mass. 64, 73." *Arnold* v. *Maxwell*, 223 Mass. 47, 48. See *Comerford* v. *Meier*, 302 Mass. 398, 400. We are of the opinion that the defendant's contention cannot be sustained. His difficulty is that he seeks to deprive the judge of the right to construe the evidence as a whole and otherwise than he would construe it. It is true that the judge found that the plaintiff told the defendant he had plenty of collateral with Lee, Higginson and Company when, in fact, the evidence discloses that he told him the collateral was at the State Street Trust Company, but the defendant admitted that the plaintiff told him he had plenty of collateral and that he would carry the stock. In these circumstances, it was immaterial where the collateral was. As a matter of fact, the plaintiff had a large amount of collateral with Lee, Higginson and Company. The plaintiff was not required to earmark or segregate the stock that he was carrying for the defendant, and the sale of that stock, in the circumstances disclosed, was not inconsistent with the allegations of the bill. The case of *Crehan* v. *Megargel*, 235 Mass. 279, is not applicable to the facts found in the case at bar.

2. What has been said disposes in a large measure of the defendant's contention that the finding of the judge as to the terms of the contract was clearly wrong. The contention, in effect, is that the evidence did not warrant a finding that the stock in question was to be bought and carried on

the plaintiff's account with his brokers. The judge was not required to believe the defendant to the effect that he understood that the plaintiff was to carry the stock for him in his safe deposit box or that he was to buy it outright. The defendant admitted that the plaintiff told him he had plenty of collateral and that he would carry the stock. Such expressions, together with the agreement of the defendant in the memorandum of November 7, 1929, to pay "interest expense," connote an arrangement such as was found by the judge. The plaintiff introduced a copy of a letter dated November 7, 1929, to the defendant, in which the plaintiff wrote: "This will acknowledge that I hold in my name 200 shares of . . . stock [the stock in question], as general collateral against your note for $16,540.00, dated November 7th 1929." It could have been found, however, that a note accompanied this letter. The note was never signed, and the defendant destroyed both the note and the letter. In the circumstances it is not necessary to determine the effect of the plaintiff's statement in this letter that he held the stock. The fact that the defendant at some time paid the plaintiff $200 on account of the transaction is not inconsistent with the interpretation placed upon the agreement by the judge. Where, as here, there was oral testimony, we are not to disturb the judge's decision unless it is plainly wrong. *National Shoe Corp.* v. *National Shoe Manuf. Co. Inc.* 302 Mass. 449, 451.

3. The defendant's counterclaim is based upon the failure of the plaintiff to carry out his agreement. It is based upon a construction of that agreement that was not adopted by the judge, and cannot be sustained.

4. The contention that the contract found by the judge constituted a wagering contract cannot be sustained. The case at bar is distinguishable from *Harvey* v. *Merrill*, 150 Mass. 1. *Northrup* v. *Buffington*, 171 Mass. 468. See *Gibney* v. *Olivette*, 196 Mass. 294. The judge found that not only was the plaintiff to make actual purchases, although on margin, but also that the purchases, in fact, were made. In effect, the plaintiff made a loan of credit to the defendant. The finding of the judge that the defendant at any

time had the right to request the plaintiff to sell or hold the stock, together with his finding that the contract was not illegal, negatives the fact found in the cases relied upon by the defendant to the effect that no actual purchase of the stock was intended. The case at bar is indistinguishable in principle from *Bullard* v. *Smith,* 139 Mass. 492, 497, 498.

5. We are of the opinion that the decree is in error in requiring the defendant, as we must assume it does, to pay "interest expense" from the dates of the sale of the defendant's two hundred shares of stock, that is, upon the balance then remaining due the plaintiff. The words "interest expense" are unusual, but we think they relate to the expense incurred by the plaintiff with his brokers while the stock in question was being carried. When this stock was sold, the judge finding that the plaintiff had a right to sell it, we think that the transaction between the plaintiff and defendant should be held to have come to an end except as to the rights of the plaintiff to recover the balance then due. We cannot see how there would be further "interest expense" from that time within the meaning of the agreement. The plaintiff gave the defendant no notice of the sales of the stock, and no demand was made upon him for the balance due as fixed by these sales. We think that the indebtedness of the defendant to the plaintiff should be computed as follows: from the purchase price of the stock, $16,500, and the broker's commission of $40, and the actual interest paid by the plaintiff on account of the purchase up to the time of the sales of the stock, there should be deducted the amount of all dividends received on the stock, the $200 paid by the defendant on account, and the largest amount received by the plaintiff for the sale of any two hundred shares of the stock in question at any time after they were purchased; the plaintiff is to have no interest thereafter until the date of bringing suit, from which date he is entitled to interest at the rate of six per cent. The case is distinguishable from *Winsor* v. *Savage,* 9 Met. 346, 353.

Finally, the defendant contends that he should not be required to pay interest from the date of bringing suit on the ground that the damages were unliquidated. It was

proper to allow interest from the date of bringing suit. *Royal Paper Box Co.* v. *Munro & Church Co.* 284 Mass. 446, 451, and cases cited. *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207, 222, and cases cited.

The only error appearing on the record relates to the method adopted to determine the amount of interest due the plaintiff as "interest expense," except in so far as the final computation of interest is also thereby affected. All other issues have been fully tried and need not be again heard. It is assumed from what appears in the record that a new trial will not be required on the question wrongly decided, and that the plaintiff and defendant are able to make the necessary calculations. But in any event, the decree is reversed and the case remanded to the Superior Court for further proceedings not inconsistent with this opinion. *Woodworth* v. *Woodworth*, 273 Mass. 402.

*Ordered accordingly.*