MARY GRISE & others *vs.* EDA G. RIEUTORD.

Hampden.    September 21, 1939. — January 29, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Equity Pleading and Practice, Bill.*

The averments of a bill in equity seeking the establishment of a resulting trust were so involved and inconclusive as to warrant the sustaining of a demurrer on the ground of uncertainty.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated February 20, 1939.

A demurrer was heard by *Donnelly, J.*

The case was submitted in this court on briefs.

*O. O. Lamontagne,* for the plaintiffs.

*T. F. Burke,* for the defendant.

Cox, J. The plaintiffs have appealed from the interlocutory decree sustaining the defendant's demurrer and from the final decree dismissing the bill. The plaintiffs in the bill allege that Charles Grise died intestate on April 15, 1914, leaving his widow, Florence Grise, and Eda G. Rieu-

tord and Oswald C. Grise as his heirs at law; that Oswald C. Grise died intestate on October 1, 1925, leaving his widow, Mary Grise, and four minor children, Charles O., Florence P., Louise E., and Mary G.; that the said Charles O. Grise died intestate on March 7, 1928; that the said Florence Grise died intestate on May 14, 1926, leaving as her heirs at law, Eda G. Rieutord possessed of one half interest, and Mary Grise and "her four minor children, your petitioners," possessed of the other half; that the said Charles Grise died possessed of two certain tracts of land more particularly described by deed recorded in Hampden County registry of deeds; (6) that on December 21, 1915, the aforesaid real estate was purchased with moneys belonging to the said Oswald C. Grise and title therein placed in the name of the said Florence Grise; and that the aforesaid real estate now stands as of record in the names of the heirs at law of Florence Grise, namely, Eda G. Rieutord, one half interest, and Mary Grise, Florence P. Grise, Louise E. Grise, and Mary G. Grise, one half interest. The bill prays that a trust be established for the benefit of the plaintiffs and that the land described be decreed as belonging to them.

The bill alleges clearly enough that when Charles Grise died intestate on April 15, 1914, he owned two parcels of real estate. He died leaving a widow, Florence Grise, and Eda G. Rieutord and Oswald C. Grise, "his heirs at law." It follows that the title to his real estate vested in these persons, and it would seem from the allegations of the bill that it vested one third in Florence and one third each in Eda G. Rieutord and Oswald C. Grise. With the title in this state, it is alleged that "on December 21st 1915, the aforesaid real estate was purchased with monies belonging to the said Oswald C Grise and title therin [*sic*] placed in the name of the said Florence Grise." Obviously, Oswald C. Grise could not have purchased his own one third, and if he purchased the one third belonging to Florence Grise a deed from her would be necessary to transfer her title. There is no allegation or implication of any such deed. In order to transfer title to his own one third, it would have been necessary for Oswald C. Grise to convey it by deed to

Florence Grise, in whose name it is alleged that title was placed. There is no allegation or implication of any such deed. In fact, the allegation as to the purchase of the "aforesaid real estate" negatives any such suggestion. If Oswald C. Grise conveyed his one third to Florence Grise, his rights, if any, in the portion conveyed would depend upon principles of law different from those upon which his rights, if any, would depend where a purchase of all the real estate was made with his money and title taken in the name of what we refer to in the law as a stranger. See *Gould* v. *Lynde,* 114 Mass. 366; *Moore* v. *Stinson,* 144 Mass. 594, 596, 597. The allegations of the sixth paragraph of the bill, wherein language is used to express the alleged existence of a resulting trust, are consistent with such a trust in the "aforesaid real estate," that is, in all the real estate that Charles Grise left when he died in 1914. If Oswald C. Grise paid Florence Grise for her one-third part, but never received a deed from her, his rights against her and those of his heirs against her or her heirs, would depend upon principles of law different from those applicable to resulting trusts. See *Glass* v. *Hulbert,* 102 Mass. 24, 28; *Barnes* v. *Boston & Maine Railroad,* 130 Mass. 388, 390; *Kelley* v. *Thompson,* 181 Mass. 122, 124.

It is possible that the real estate left by Charles Grise was sold by order of the Probate Court, and that the purchase referred to in the sixth paragraph of the bill was made at such a sale. But the fact that there is no such allegation, taken in connection with the detailed description of the heirs of Charles Grise, points logically to the conclusion that there was no such sale.

Just what is the significance of the reference to the heirs of Florence Grise is not clear unless it is an attempt to say that in so far as the real estate in question is concerned, and apart from any possible trust, the persons interested in it, at the time of Florence Grise's death, were Eda G. Rieutord, the defendant, "Mary Grise and her four minor children" whose father was Oswald C. Grise, who is alleged to have died about six months before Florence. It seems clear that Mary Grise, the widow of Oswald C. Grise, could

not have been an heir of Florence, and it seems certain that when Florence died her heirs were the defendant and the children of Oswald C. Grise, including Charles O. Grise who is alleged to have died intestate on March 7, 1928, almost two and a half years after the death of his father. There is no allegation to show what became of the interest of Charles O. Grise, if any, in the real estate. It may be that, upon the face of the bill, it does not appear that his representative or heirs are necessary parties (see *Boston Water Power Co.* v. *Boston & Worcester Rail-Road,* 16 Pick. 512, 527; *White* v. *Curtis,* 2 Gray, 467, 472, 473).

It is an elementary rule of equity pleading that the bill must contain a clear and exact statement of all the material facts as are stated. *Fuller* v. *Lovell,* 304 Mass. 542, 546, and cases cited. We must assume that the component parts of the bill in the case at bar were stated because they were deemed relevant and material to the question whether the plaintiffs were entitled to have a resulting trust established in their behalf in all the real estate left by Charles Grise at the time of his death. When the allegations of the bill are considered as a whole, we are of opinion that the bald allegation in the sixth (6) paragraph as to a resulting trust is so involved and rendered so uncertain by the other allegations that the trial judge was right in sustaining the demurrer, on the ground that the alleged trust is not stated or described with such certainty that the court can ascertain or enforce it.

It appears from the record that, upon the sustaining of the demurrer, the plaintiffs were given twenty days within which to amend their bill. See Rule 23 of the Superior Court (1932). The plaintiffs did not avail themselves of this opportunity.

*Interlocutory decree sustaining demurrer affirmed.*
*Final decree affirmed with costs.*