**Eleonora R. SEARS, Defendant, Appellant,**

v.

**Hartmann H. PAULY, Plaintiff, Appellee.**

**Hartmann H. PAULY, Plaintiff, Appellant,**

v.

**Eleonora R. SEARS, Defendant, Appellee.**

**Nos. 5366, 5367.**

United States Court of Appeals First Circuit.

Nov. 26, 1958.

Joseph B. Abrams, Boston, Mass., with whom Samuel Abrams, Joseph G. Crane and Ruth I. Abrams, Boston, Mass., were on brief, for Eleonora R. Sears.

James D. St. Clair, Boston, Mass., with whom Blair L. Perry and Hale & Dorr, Boston, Mass., were on brief, for Hartmann H. Pauly.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

There are two appeals arising out of this litigation that are before us for decision. Appeal No. 5366 is by the defendant and is from that part of the judgment of the United States District Court for the District of Massachusetts, following a jury verdict for the plaintiff, awarding the plaintiff $85,000 on his second cause of action. Appeal No. 5367 is by the plaintiff and is from an order of the district court denying the plaintiff's motion to amend the judgment by adding thereto interest from the date the action was commenced to the date of entry of judgment.

This case arises out of a controversy as to the existence and terms of an oral contract of employment between the defendant, Eleonora R. Sears, the owner of a number of costly horses, and the plaintiff, Hartmann H. Pauly, an Hungarian born trainer and former United States Olympic rider. The jury in response to written interrogatories found that the plaintiff and defendant entered into a contract of employment of the plaintiff for his life and that the contract was made on August 19, 1954 at Pride's Crossing, Massachusetts. The jury also found that this contract had been broken by Miss Sears and awarded Pauly $85,000 as damages. The jury further found that the gift of a horse, Mizban, from the Aga Khan to Pauly was associated with negotiations between the Aga Khan and Miss Sears for the purchase by her of certain of his race horses, which negotiations were conducted on her behalf by Pauly prior to the breach of the employment contract. On the basis of this finding, the district judge ordered judgment for the defendant on the plaintiff's third cause of action [1] which had sought damages for the retention of Mizban by Miss Sears. Pauly had alleged that Mizban had been transferred to Miss Sears only because of the existence of the lifetime employment contract.

█ A question has been raised as to the propriety of the defendant's appeal. In her notice of appeal it is expressly stated that the appeal is from that part of the final judgment entered on the plaintiff's second cause of action. The

---

1. The plaintiff's first and fourth causes of action were waived prior to the taking of testimony.

defendant made no motion for a directed verdict under F.R.Civ.P. 50, 28 U.S.C.A. However, following the verdict on February 3, 1958 and entry of judgment on February 5, 1958, the defendant on February 14, 1958 moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion for judgment notwithstanding the verdict had no legal effect. First, it was untimely and, secondly, it had not been preceded by a motion for a directed verdict on the second count. Therefore, we shall treat the motion exclusively as one made under F.R.Civ.P. 59(a) for a new trial. This motion was denied by the district judge on March 25, 1958 and thereupon the above notice of appeal from the judgment was filed by the defendant.

In Aberlin v. Zisman, 1 Cir., 1957, 244 F.2d 620, certiorari denied 355 U.S. 857, 78 S.Ct. 84, 2 L.Ed.2d 63, we indicated that where a motion for a new trial was denied an appeal would lie from the denial of that motion and such appeal would permit the appellant to assert any alleged errors which entered into and infected the judgment, the existence of which errors would make it an abuse of discretion for the district court to deny the motion for a new trial. However, it was also made clear in Peterman v. Indian Motorcycle Company, 1 Cir., 1954, 216 F.2d 289, that where there was a denial of a motion for a new trial the appellant could choose to appeal from the judgment itself rather than from the order denying his motion for a new trial, and such appeal would also present any alleged errors which entered into and infected the judgment, as, for instance, alleged erroneous rulings at the trial or in instructions to the jury. Cf. Di Giovanni v. Di Giovannantonio, 1956, 98 U.S. App.D.C. 147, 233 F.2d 26. In the instant case the grounds of the defendant's motion for a new trial related to alleged errors incurred in the course of the trial as contrasted with such a ground as newly discovered evidence. These errors consisted of allegedly incorrect instructions to the jury, the inconsistency of the jury's answer to a written interrogatory with a preliminary jury report asking for further instructions on the law, the insufficiency of the evidence and that the verdict was contrary to the law and the evidence.

The main thrust of the defendant's brief urges that as a matter of law the evidence did not justify a verdict for the plaintiff. However, as pointed out above, no motion was ever made by the defendant for a directed verdict and therefore this question is not properly before us. Moore v. United States, 1893, 150 U.S. 57, 61, 14 S.Ct. 26, 37 L.Ed. 996; Boudreaux v. Mississippi Shipping Company, 5 Cir., 1955, 222 F.2d 954; Glendenning Motorways v. Anderson, 8 Cir., 1954, 213 F.2d 432; Harriman v. Midland Steamship Line, Inc., 2 Cir., 1953, 208 F.2d 564; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 1941, 122 F.2d 350; Slip Scarf Co. v. Wm. Filene's Sons Co., 1 Cir., 1923, 289 F. 641. See Home Ins. Co. of New York v. Davila, 1 Cir., 1954, 212 F.2d 731, 733; United States v. Harrell, 8 Cir., 1943, 133 F.2d 504, 506; 6 Moore's Federal Practice, § 59.08 [5]n35, 5 ibid. § 50.05 [1].

Although the defendant asserted in her motion for a new trial that the district judge erred in three instructions to the jury, two of these alleged errors are not relied upon in her brief and therefore will not be discussed in this opinion. The third alleged error, although not claimed directly in the defendant's brief to be the ground upon which reversal is sought, is dependent upon the same arguments that were made in support of the defendant's position that the evidence does not justify a verdict for the plaintiff. If this allegedly erroneous instruction was properly objected to in the district court as required by F.R.Civ.P. 51 the legal necessity of its inclusion in the judge's charge will be considered in our determination as to whether the district judge abused his discretion in denying the defendant a new trial. In order to make clear the background of the instruction in question, it is necessary to set forth the factual situation presented to the jury.

It appears that Miss Sears first met Pauly in March of 1954, when he sold her two horses for $35,000. In May of 1954, apparently on the recommendation of Pauly, Miss Sears purchased a twenty horse stable and cottage in Santa Barbara, California, close by some undeveloped land recently purchased by Pauly. Shortly thereafter Miss Sears, again apparently acting with the advice of Pauly, purchased more horses in an effort to build a racing stable and these horses, along with the two others purchased from Pauly, were sent to Miss Sears' Santa Barbara property to be cared for by Pauly. In August, 1954 Miss Sears invited Pauly east to Saratoga, New York, to advise her on the purchase of some additional horses for her racing stable and three horses were purchased at a total cost of $118,000. Pauly testified that while at Saratoga, Miss Sears suggested that he become the trainer and manager of her horses. On the following day, which was Sunday, August 15, 1954, at Miss Sears' home in Pride's Crossing, Massachusetts, Pauly testified that the defendant renewed her offer. In the face of his hesitation, as he was reluctant to give up his amateur riding status, Pauly testified that Miss Sears stated " * * * you will be with me for life and you have not to worry about you and Mrs. Pauly." Pauly then accepted this offer. On the following day he left for Saratoga with two of the defendant's saddle horses which were to be shipped from Saratoga, together with the three horses purchased there, to the Santa Barbara stable by train. On Thursday, August 19, 1954, Miss Sears in a letter to Pauly stated "You don't know how overjoyed I am to think that you are taking care of my animals—It is so wonderful, and I do hope they are going to run fast." About this time Pauly had been negotiating with the Aga Khan for the purchase by Miss Sears of several race horses. In September after conferring with Miss Sears in Boston, Pauly traveled to Europe at the Aga Khan's expense and purchased several costly race horses for Miss Sears. Before leaving Europe, Pauly was given the horse, Mizban, by the Aga Khan, and in September 16, 1954, he wrote to Miss Sears that "I took Mizban, I can't take any gifts involved in a deal, for which you paid high prices. Therefore, please take Mizban as your horse and I shall transfer the ownership to you, as soon as I am back home." Miss Sears admitted that she received this horse from the plaintiff without paying anything for it. Later that fall Pauly purchased two more horses for Miss Sears in Lexington, Kentucky, and advised her to purchase a half share in another horse. In December 1954, a Mr. Hopkins who was Miss Sears' representative and attorney and who was deceased at the time of the trial, visited Pauly at the stable in Santa Barbara and when the question of Pauly's salary came up, Pauly testified that Mr. Hopkins agreed that $1,000 a month would be a fair figure. On January 31, 1955, a letter signed by Mr. Hopkins, admittedly with Miss Sears' consent, was delivered to Pauly, notifying him that "In the best interests of Miss Sears it has become necessary to supplant you as manager and trainer * * *."

■■ The trial judge's charge to the jury properly included instructions that if the contract was made at Pride's Crossing on Sunday it was "absolutely illegal under the Massachusetts law." Day v. McAllister, 1860, 15 Gray 433, 81 Mass. 433. The defendant's trial counsel in the second of his requested instructions on the issue of the Sunday contract urged that the jury be instructed that "Although the parties may adopt the terms of a bargain originally made on Sunday as the terms of a new contract subsequently made, such subsequent contract is not binding unless it satisfies the requirements for the formation of a contract." The trial judge then charged the jury that the parties could never make their Sunday contract legal, but they could adopt its terms by their later activities if those activities are sufficient to constitute a contract, either expressly or impliedly. Following the charge, de-

fendant's trial counsel objected to the judge's instruction with regard to the adoption by implication of the Sunday contract through subsequent activity of the parties.

The question presented to us by this objection is whether it is possible for parties to adopt an illegal Sunday contract impliedly through their subsequent conduct rather than by express agreement between the parties. The leading Massachusetts case on this point is Miles v. Janvrin, 1909, 200 Mass. 514, 86 N.E. 785. In this case a tenant sought to hold his landlord liable for injuries suffered because of faulty stairs on the grounds that the landlord had contracted to keep such stairs in good condition and the tenant's personal injuries resulted from the landlord's breach of that contract. The court distinguished an agreement only to make general repairs under which the landlord would not be liable from an agreement to keep the property in safe condition and the court found that the parties had adopted the latter agreement. The only evidence that it was the latter agreement rather than the former was the oral promise of the defendant's husband made on a Sunday that he would put the stairs in good condition and keep them that way during the tenant's occupancy. However, the court declared that any agreement made on a Sunday was an illegal contract which could not be ratified so as to be in effect from the beginning, but it could be adopted subsequently without formality. It was stated that this Sunday agreement was competent for the purpose of explaining the later agreement which was not fully intelligible in itself and showing its meaning, and that this evidence along with statements made by the defendant's husband on a weekday that he would repair a defect in the stair was sufficient evidence that the parties had adopted the contract which they previously had attempted to make on Sunday. Thus although there was no express agreement by the parties that all the terms of the Sunday contract would be adopted in the

enforceable contract, which in itself was implied from their conduct on secular days, it was held that such terms could be inferred to be included in the subsequent agreement. It follows that the district judge in his instruction on this point correctly interpreted the Massachusetts law as to the adoption of Sunday contracts. See O'Brien v. Shea, 1911, 208 Mass. 528, 95 N.E. 99, 100; Restatement, Contracts, § 539 (1932), Illustrations 2 and 3.

■ The defendant's point with regard to a preliminary report by the jury that a contract was made on Sunday being inconsistent with the jury's later answer finding the contract was made on August 19 is not well founded. The jury could reasonably conclude that while the parties attempted to contract on Sunday such contract was illegal but that an implied contract arose between the parties through their subsequent conduct.

■ Miss Sears' final point is that the verdict was against the weight of the evidence. It is only in a very unusual case that an appellate court would be justified in concluding that an abuse of discretion was committed by the trial judge in refusing to grant a new trial on this ground. Marshall v. Nugent, 1 Cir. 1955, 222 F.2d 604, 58 A.L.R.2d 251, see United States v. Harrell, 8 Cir., 1943, 133 F.2d 504, 506. Certainly here the conduct of Miss Sears, as for example, in her acceptance of the horse, Mizban, and the wording of the letter of discharge, could be reasonably regarded by the jury as consistent with the existence of an employment contract between her and the plaintiff. Furthermore, such a contract could be implied from the conduct of Pauly in caring for and training Miss Sears' horses and by her acceptance of his services. See Grant v. Carlisle, 1951, 328 Mass. 25, 101 N.E.2d 376; W. A. Snow Iron Works v. Chadwick, 1917, 227 Mass. 382, 116 N.E. 801, L.R.A.1917F, 755; Hayes v. Philadelphia & R. Coal & Iron Co., 1890, 150 Mass. 457, 23 N.E. 225.

Plaintiff's cross appeal, No. 5367, places in issue the denial of the plaintiff's motion to amend the judgment by adding interest thereto from the date of the commencement of the action, February 3, 1956, to the date of judgment, February 5, 1958. It is clear from the record that the plaintiff did not request that the jury be instructed to include such interest in its verdict, nor in fact was the jury so instructed, nor was any objection made, following the charge, to the judge's failure to so instruct as is required by F.R.Civ.P. 51.

Plaintiff in his motion to amend the judgment declared that under Massachusetts law he was entitled to interest from the date of commencement of the action to the date of judgment. The defendant concedes that in an action of contract for an unliquidated amount it is proper to include interest from the date of bringing suit as an element of damages. Buckley & Scott Utilities v. Petroleum Heat & Power Co., 1943, 313 Mass. 498, 48 N.E.2d 154; Fuller v. Lovell, 1939, 304 Mass. 542, 24 N.E.2d 528. Defendant argues, however, that under Massachusetts practice, the jury has the function of including preverdict interest in its verdict and that the court may not add such interest. Minot v. City of Boston, 1909, 201 Mass. 10, 86 N.E. 783, 25 L.R.A.,N.S., 311. But plaintiff further contends that the addition of interest by the court is required by F.R.Civ. P. 54(c) which states that " * * * every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Plaintiff further argues that the addition of interest to the verdict by the federal court is not precluded merely because of the Massachusetts rule which forbids the state court to add such preverdict interest to a jury verdict because such rule is, in the words of the Massachusetts Supreme Judicial Court in Fidelity & Casualty Co. of New York v. Huse & Carleton, 1930, 272 Mass. 448, 172 N.E. 590, 72 A.L.R. 1143, one of "practice and procedure".

The plaintiff does concede, however, that the better practice on his part would have been to request that the jury be instructed to include interest in its verdict. Here the damages to the plaintiff are to some extent conjectural in that they depend on a jury determination as to his probable length of life and future earning capacity. Because of the inexact nature of the various elements that determine the amount of the plaintiff's recovery, it would seem especially fitting that the inclusion and determination of interest be made by the jury. Therefore, because of the peculiar nature of the unliquidated damages in issue in this case, the decision by the trial court not to add preverdict interest to the award made by the jury was not error.

Judgment will be entered affirming the judgment of the district court and its order denying the plaintiff's motion to amend that judgment.

WOODBURY, Circuit Judge (concurring).

I do not quite understand the basis for the decision that the trial court was not in error in failing to add preverdict interest to the award made by the jury. If it is conceded that plaintiff is entitled to such interest as a matter of substantive Massachusetts law, and that the federal court is free to disregard as a matter of procedure the Massachusetts practice of having the jury add the interest, and the damages have been fixed by the jury, I fail to see why the nature of the elements going into the damages has any bearing on the "inclusion and determination" of the interest on those damages.

I would, however, reach the same result as my associates by simply holding that the plaintiff lost his right to interest, if not by failing to request a proper instruction on the matter, at least by failing to call the attention of the trial court to the inadequacy of its instruction with respect to interest before the jury retired to consider its verdict.